**GIBBONS P.C.**
Robert K. Malone, Esq.
Brett S. Theisen, Esq.
Christopher P. Anton, Esq.
Kyle P. McEvilly, Esq.
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
      btheisen@gibbonslaw.com
      canton@gibbonslaw.com
      kmcevilly@gibbonslaw.com

*Counsel for BML Properties, Ltd.*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | (Hon. Christine M. Gravelle) |
| CCA Construction, Inc.,[1] | Chapter 11 |
| Debtor. | Case No. 24-22548 (CMG) |

### REPLY OF BML PROPERTIES, LTD. IN SUPPORT OF
### MOTION FOR ENTRY OF AN ORDER APPOINTING AN EXAMINER

BML Properties, Ltd. ("BMLP"), by and through its undersigned counsel, hereby submits this reply (the "Reply")[2] in further support of the *Motion of BML Properties, Ltd. for Entry of an Order Appointing an Examiner* (Docket No. 88) (the "Examiner Motion")[3] and in response to (1) *Debtor's Objection to Motion of BML Properties, Ltd. for Entry of an Order Appointing an Examiner* (Docket No. 120) (the "CCA Objection"), and (2) *CSCEC Holding Company, Inc.'s*

---

[1] The last four digits of CCA's federal tax identification number are 4862. CCA's service address for the purposes of this chapter 11 case is 445 South Street, Suite 310, Morristown, NJ 07960.

[2] All citations to documents filed on the docket cite to the relevant paragraph or to the page number assigned by the Court's electronic filing system.

[3] Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Examiner Motion.

1

*Statement with Respect to the Motion of BML Properties, Ltd. for Entry of an Order Appointing an Examiner* (Docket No. 118) (the "CSCEC Objection"). In further support of the Reply, BMLP submits the Supplemental Declaration of Brett S. Theisen, filed contemporaneously herewith, and respectfully states as follows:

**REPLY**

1. CCA is abusing the bankruptcy process for the benefit of its shareholder, CSCEC Holding (together with its affiliates, the "CSCEC Group"), and an independent fiduciary is thus necessary to investigate the extent of the CSCEC Group's misconduct for the benefit of non-insiders. CCA claims to have commenced this bankruptcy case to obtain "the necessary breathing room to pursue [its] appeal . . . while at the same time ensuring a fair and equitable resolution of claims."[4] But discovery has revealed that the CSCEC Group has created the purported liquidity crisis that it is now using as a pretense to incur a $40 million secured DIP loan that will give its insiders an upper hand in the bankruptcy, to the detriment of existing third party creditors, and that will deplete any value in CCA's estate otherwise available to non-insiders.

2. As explained in BMLP's DIP Objection,[5] CSCEC Holding should not be allowed to use that feigned crisis to, among other things, leapfrog BMLP's $1.6 billion judgment, release potentially valuable estate causes of action, and obtain the unlimited ability to credit bid for CCA's assets, which ███████████████████████████████████████████████████████████████████████████████████████████. In sum, this chapter 11 case is not being used to preserve the status quo while CCA pursues its appellate rights in New

---

[4] Docket No. 11 at ¶ 44 (Wei Declaration).
[5] *See Omnibus Objection of BML Properties Ltd.* (the "DIP Objection"). BMLP filed the DIP Objection under seal on February 7, 2024 and served a copy on counsel to CCA, CSCEC Holding, and the Office of the United States Trustee. A placeholder for the sealed DIP Objection is filed at Docket No. 128.

2

York state court; rather, CCA will use the DIP loan to impede and hinder its largest creditor, BMLP, so that even if CCA loses the appeal, all of CCA's value will go to its parent CSCEC Holding.

3. While CCA and its insiders readily avail themselves of the benefits and protections that the Bankruptcy Code offers to debtors, they shirk the debtor's obligations and protections afforded to creditors. This includes their attempt here to side-step section 1104(c)(2) of the Bankruptcy Code, which provides for the *mandatory* appointment of an examiner where, as here, the "debtor's fixed, liquidated, unsecured debts . . . exceed $5,000,000." 11 U.S.C. § 1104(c); *In re FTX Trading Ltd.*, 91 F.4th 148, 156 (3d Cir. 2024) (holding the mandatory nature of subsection 1104(c)(2)). They should not be permitted to do so.

4. Neither CCA nor CSCEC Holding disputes that BMLP has an enforceable judgment against CCA in the amount of over $1.6 billion. Nevertheless, CCA argues that it is "unclear" whether BMLP's judgment counts towards the "fixed debt" requirement under section 1104(c) without providing any further explanation. CCA Obj. at 22. The Examiner Motion sets forth extensive authority (including from this Court) that supports BMLP's judgment counting for purposes of the $5 million threshold under Section 1104(c)(2), which CCA does not even attempt to address. *See* Examiner Mot. at 17-20.

5. Courts are clear: "***[o]nce the state court enter[s] [a creditor's] judgment, the judgment bec[omes] a fixed debt obligation of [the debtor]***." *In re Cybersight LLC*, 2004 WL 2713098, at *3 (D. Del. Nov. 17, 2004) (emphasis added); *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1186 (7th Cir. 1980) ("The judgment, thus, transformed the claim into a fixed debt."); *Matter of Elsub Corp.*, 66 B.R. 172, 179 (Bankr. D.N.J. 1986) (tort claims are "not fixed ***unless and until a judgment is entered setting the debtor's liability***.") (emphasis added); *see also In re Tristar Esperanza Properties, LLC*, 782 F.3d 492, 496 (9th Cir.

2015) (stating that "[n]othing suggests that Congress intended to distinguish claims based on *judgments or other fixed debts* from unliquidated claims arising from the same wrong.") (emphasis added).

6. Having effectively conceded that an examiner is mandatory, CCA and CSCEC Holding complain that an examiner with a "near limitless mandate" is unnecessary in light of CCA's independent director. CCA Obj. at 27; *see also* CSCEC Obj. at 2. But the scope of the examiner's investigation is focused on identifying potential estate claims against CCA's current and former management and its affiliates, which is soundly within the confines of section 1106(a)(3). That scope is particularly appropriate here given CCA's proven history of fraud and how extensively CCA is intertwined with the broader CSCEC Group.[6] Indeed, the investigation of estate claims is a "textbook case calling for the appointment of an examiner." *In re Keene Corp.*, 164 B.R. 844, 856 (Bankr. S.D.N.Y. 1994) (citations omitted). A broad investigation is not a problem because "[t]he investigation of an examiner in bankruptcy . . . is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the Examiner." *See In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993) (citations omitted).

7. CCA and CSCEC Holding next argue that CCA's purportedly independent director, Ms. Abrams, obviates the need for an examiner because she can investigate estate claims that she deems appropriate "at the appropriate time." CCA Obj. at 4 and 16. But the Third Circuit has already squarely rejected this same exact argument. *See FTX Trading*, 91 F.4th at 156. There, the debtor and creditors' committee opposed the appointment of an examiner because FTX had already had a "completely independent" director and thus argued an investigation would be "duplicative and wasteful." *Id*. The Court found that the debtor's argument was unpersuasive because

---

[6] *See e.g.,* DIP Obj. at 14-20, 35, 46,

4

"Congress has guaranteed that an [examiner's] investigation . . . would differ from those conducted by the [debtor] in several significant ways." *Id*. As the Court went on to explain, the distinction is that the Bankruptcy Code ***"forbids a debtor in possession, the quintessential 'insider,' from performing the duties of an examiner and investigating itself*.**" *Id.* (emphasis added). Moreover, the Court explained that "an examiner . . . must make their findings public, an obligation neither a creditor committee nor a debtor in possession shares." *Id*. at 157.

8. In addition to the Third Circuit's reasoning in *FTX*, the circumstances here make an examiner even more important and necessary. Unlike *FTX*, there is no creditors' committee, and CCA's existing management remains in place ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[7] *See Id.* at 156 (noting Bankruptcy Court's finding that John Ray was "'completely independent' from FTX's founding members and that any remaining prior officers" had been stripped of authority). As a result, the Debtor's existing management and employees continue to work for the benefit of the deeply integrated CSCEC Group. *Id.* (explaining the importance of an examiner where "officers or employees who may have engaged in wrongdoing could remain").

9. Ms. Abrams also cannot perform a truly independent investigation like an examiner. As a threshold matter, the Examiner's scope will be, in part, to investigate claims against "current and former officers and directors." Examiner Mot. at 88. This in and of itself disqualifies Ms. Abrams, who is herself a current director. *FTX Trading* at 156 (examiner must be "disinterested"). Moreover, Ms. Abrams relies on the same legal advisors as CCA, which

---

[7] Blum Rough Dep. Tr. 41:25-42:3 ███████████████████████████████████████████████. An excerpt of Mr. Blum's deposition is attached as <u>Exhibit A</u> to the Supplemental Theisen Declaration.

5

"alone raises questions regarding the quality and independence of the counsel and advice received." *In re Tele-Commc'ns, Inc. S'holders Litig.*, 2005 WL 3642727 at *10 (Del. Ch. Dec. 21, 2005). And Ms. Abrams has already approved a DIP Loan that would pledge liens on avoidance actions to CSCEC Holding and require CCA's Plan to release claims and CSCEC Holding and its insiders.[8] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[9] Any future investigation by Ms. Abrams ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ would lack credibility.

10. The CSCEC Group tries to distance itself from the fraud findings in the New York Decision by claiming that they occurred "ten or more years ago," CSCEC Obj. at 2, but nothing has apparently changed. Ning Yuan, who the New York Court found to have made or directed others to make the fraudulent misrepresentations at issue in the New York Decision, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[10] In the New York action, Justice Borrok found that CCA, acting through Mr. Yuan "controlled CCAB and CSCECB" (*i.e.*, its co-defendants) and "used that domination and commingling of assets and corporations to perpetrate a wrong on BMLP."[11]

11. Neither CSCEC Holding's nor CCA's objections offer any evidence that they have taken *any* measures to prevent continued fraud and misconduct or that they themselves conducted any investigation into those allegations. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[8] DIP Obj. at 45.
[9] Abrams Rough Dep. Tr. 158:10-159:6. An excerpt of Ms. Abrams' deposition is attached as Exhibit B to the Supplemental Theisen Declaration.
[10] Abrams Rough Dep. Tr. 59:2-60:5; CCA-BK0003173 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓).
[11] See Docket No. 50-1 at 70.

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.[12]

12.     Instead, CCA spends pages discussing its grounds for appealing the New York Decision. CCA Obj. at 6-11. The merits of CCA's scattershot and baseless appeal will ultimately be resolved in New York,[13] but this Court should pay particular attention to the credibility determinations that the New York court made after conducting an eleven-day bench trial (and which are owed deference on appeal),[14] as it seems that past is prologue. As Justice Borrok found, the testimony of CCA Group's witnesses in the New York trial "was often inconsistent with their own internal communications" and "not credible."[15]

13.     Now, another CSCEC Group witness—███████████████ Mr. Jichao Xu—continues this pattern by offering self-evidently non-credible testimony. At his deposition, Mr. Xu testified that ████████████████████████ ██████████████████████████████████ that he sent was actually referring to ████████████████."[16] Mr. Xu also purported to not know even basic facts, including, among other things, not knowing: ████████████████████████████████████

---

[12] Xu Rough Dep. Tr. 37:10-17 ████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████ An excerpt of the Mr. Xu's deposition is attached as Exhibit C to the Supplemental Theisen Declaration.

[13] Supp. Theisen Decl. Ex D (BMLP Appellee Brief). CCA omitted BMLP's appeal brief from the Worenklein Declaration that it filed in support of its objection. For completeness and the Court's convenience, the reply by the CSCEC Group defendants is attached as Exhibit E to the Theisen Declaration.

[14] Supp. Theisen Decl. Ex. D (BMLP Appellee Brief) at 3, 31.

[15] See Docket No. 50-1 at 2, 14.

[16] Xu Rough Dep. Tr. 65:7-22.

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████[17]

14.	Finally, CSCEC Holding contends that BMLP will somehow hijack the independent Examiner so that it can get a "second (and far larger) bite" at bringing claims against CCA's affiliates.  CSCEC Obj. 2-3.  But an examiner "is first and foremost disinterested and nonadversarial and answers solely to the Court."  *FTX Trading Ltd.*, 91 F.4th at 156 (quotations and citations omitted).  As the Court is well aware, the Office of the United States Trustee, not BMLP, will select the examiner, who will operate with total independence from BMLP or any other party in interest.  This argument is completely meritless.

15.	CSCEC Holding also contends that an examiner should not be appointed because "BMLP has had nearly seven years" to investigate and assert claims against CSCEC Holding or its affiliates and that BMLP failed to do so.  But this illustrates a fundamental misunderstanding of the purpose of an examiner.[18]  The Examiner will be investigating potential *estate* claims that creditors could assert on behalf of CCA against CSCEC Holding and other affiliates *in this bankruptcy case*, not *direct* claims that BMLP could assert *in other proceedings*.  CSCEC Holding's stated concerns about the investigation betrays its real motivation for opposing the examiner, which are the same reasons it is so eager to quash BMLP's Rule 2004 subpoena: there are likely colorable estate claims based on the CSCEC Group's abuse of the corporate form of CCA.

---

[17] *Id*. at 14:16-25; 17:2-7; 17:8-18:24; 47:4-48:2.
[18] CSCEC Obj. at 2.

## RESERVATION OF RIGHTS

16. BMLP reserves the right to pursue any direct claims it may have against CCA or any other parties in this Chapter 11 case, as well as to seek standing to bring any derivative claims on behalf of the estate, given that no creditor's committee has been appointed.

17. BMLP reserves the right to seek appointment of a Trustee pursuant to section 1104(a) of the Bankruptcy Code.

18. BMLP further reserves the right to pursue any proceedings in furtherance of enforcing, executing, or otherwise satisfying the New York Judgment and/or BMLP's creditor rights in any other court or jurisdiction. Consistent with the Confidentiality Stipulation and Protective Order, BMLP reserves the right to seek authorization from the Court to use materials disclosed pursuant to that order in connection with such proceedings. *See* Docket No. 86 at 5.

## CONCLUSION

**WHEREFORE**, BMLP respectfully request that the Court grant the Examiner Motion and direct the Office of the United States Trustee to appoint an examiner in these proceedings.

Dated: February 10, 2025
Newark, New Jersey

**GIBBONS P.C.**

*/s/ Brett S. Theisen*
Robert K. Malone, Esq.
Brett S. Theisen, Esq.
Christopher P. Anton, Esq.
Kyle P. McEvilly, Esq.
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
       btheisen@gibbonslaw.com
       canton@gibbonslaw.com
       kmcevilly@gibbonslaw.com

*Counsel for BML Properties, Ltd.*

9