**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Sidney P. Levinson (admitted *pro hac vice*)
Erica S. Weisgerber (admitted *pro hac vice*)
Molly Baltimore Maass (*pro hac vice* pending)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
nlabovitz@debevoise.com
slevinson@debevoise.com
eweisgerber@debevoise.com
mbmaass@debevoise.com

*Co-Counsel to the Debtor and Debtor in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Felice R. Yudkin
Ryan T. Jareck
Court Plaza North, 25 Main Street
Hackensack, NJ 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel to the Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| CCA Construction, Inc.,[1] | Case No. 24-22548 (CMG) |
| Debtor. | |

## WRITTEN DIRECT TESTIMONY OF ELIZABETH ABRAMS IN SUPPORT OF FIRST DAY PLEADINGS AND DEBTOR IN POSSESSION FINANCING

I, Elizabeth Abrams, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct:

### Introduction

1.    I, Elizabeth Abrams, submit the following declaration as my written direct testimony in support of the relief requested in the *Debtor's Motion for Entry of Interim and Final*

---

[1]    The last four digits of CCA's federal tax identification number are 4862.  CCA's service address for the purposes of this chapter 11 case is 445 South Street, Suite 310, Morristown, NJ 07960.

*Orders (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 4] (the "**DIP Motion**") and the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Continue to Use Its Bank Accounts and Maintain Existing Business Forms, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 5] (the "**Cash Management Motion**") filed by CCA Construction, Inc. ("**CCA**" or the "**Debtor**").  I have personal knowledge of the following facts and attest under penalty of perjury that they are true.

2.      I am the Managing Member of Spruce Brook Partners, where I serve as an independent director for companies in various industries that are executing complex financial transactions and experiencing transformative change.  As relevant here, I am a member of the board of directors and the sole member of a committee of independent directors of CCA (respectively, the "**Board**" and the "**Special Committee**").

3.      I am authorized to submit this declaration on behalf of CCA.  Except where specifically noted, the statements in this declaration are based on: (a) my personal knowledge; (b) information obtained from members of CCA's management team, employees or other advisors; (c) my review of relevant documents and information concerning CCA's operations, financial affairs and restructuring initiatives; or (d) my opinions based upon my restructuring experience and knowledge.  If called upon to testify, I could and would testify competently to the facts set forth herein.

## Background and Qualifications

4.      I have more than 20 years of experience in corporate finance, working with boards, investors, and management teams to develop strategies for navigating transformational changes. Since 2023, I have served as an independent director on the boards of several companies. I have advised on many complex restructuring transactions, including those for debtor-in-possession financing, across sectors, including power, real estate, oil & gas, and public finance. CCA is the first company in the construction industry for which I have served as an independent director.

5.      Prior to becoming an independent director, between 2021 and 2022 I served as the Chief Financial Officer for K Health, an AI-driven growth-stage healthcare company at which I developed the company's finance function from scratch and implemented rigorous financial reporting, systems, and processes.

6.      Prior to K Health, I spent my career as an investment banker. Most recently, from 2018 to 2021, I was a Senior Managing Director at Guggenheim Securities, where I advised stressed and distressed companies and their stakeholders in executing value-maximizing restructuring and liability-management transactions. From 2012 to 2018, I was a Managing Director at Millstein & Co., a financial advisory firm, where I originated, structured, and executed complex restructuring, capital markets, and M&A transactions. I represented the Commonwealth of Puerto Rico, served as a testifying expert in litigation related to the restructuring of Puerto Rico's debt load, and represented an ad hoc first-lien committee of Texas Competitive Energy Holdings (n/k/a Vistra Energy), which held over $25 billion of debt, in the restructuring of Energy Future Holdings. From 2003 to 2012, I held various positions, including as a Director at Miller Buckfire & Co., an investment bank, where I designed and executed financing, restructuring, and M&A transactions and negotiated new financings, amendments, comprehensive deleveraging

transactions, exchanges and sales with lenders, creditors, equity investors, and strategic and financial buyers.

7.      I have experience as a testifying expert for clients in contested matters, and I have been involved with numerous contested restructuring transactions.  I have also lectured on restructuring topics at the University of Virginia and served on many industry panels discussing various topics in corporate governance and corporate finance.

8.      I graduated from the Jerome Fisher Program in Management and Technology with dual degrees from the Wharton School and the School of Engineering and Applied Science at the University of Pennsylvania.  I have held FINRA licenses including Series 7, 24, 50, 63, and 79.

9.      A copy of my resume as of September 2024 is attached hereto as **Exhibit A**.

## **CCA**

10.      I was engaged by CCA to serve as an independent director of the Board on October 21, 2024.

11.      Prior to my engagement, in September 2024, Natasha Labovitz of Debevoise & Plimpton LLP ("**Debevoise**"), CCA's outside counsel, reached out to me regarding the opportunity as an independent director for CCA.  Ms. Labovitz and I knew each other generally through mutual contacts in the restructuring industry and through our service on the board of Her Justice, a legal non-profit organization.  Prior to this engagement with CCA, I had never worked with Ms. Labovitz, Debevoise,[2] CCA, Cole Schotz P.C., or BDO Consulting Group LLC ("**BDO**"), CCA's financial advisor retained in connection with this chapter 11 case.

12.      In early October of 2024, I met with Yan Wei (Chairman and Chief Executive Officer of CCA), James McMahon (former General Counsel of CCA), Chenyue Zhang (in-house

---

[2]      On one occasion that I can recall, I worked across from Debevoise on a transaction.

counsel at CCA) and others to learn more about CCA and discuss the opportunity to become an independent member of its board.  After that meeting, I sent Mr. Wei an email thanking him for the opportunity to meet with his team and reiterating my interest in the engagement.  Shortly thereafter, I was offered and accepted the role.

13.     On October 21, 2024, I was appointed to the Board as an independent director.  The minutes of that meeting are attached hereto as **Exhibit B**.  For this engagement, I am compensated $40,000 monthly, which is comparable to my other independent director engagements, and the Board can remove me with or without cause.  My engagement letter with CCA is attached hereto as **Exhibit C**.

14.     Shortly after my appointment to the Board, I familiarized myself with CCA's business and financial condition, in consultation with CCA's advisors, including Debevoise and BDO, as well as certain members of CCA's team.

15.     When I joined the Board, CCA was evaluating restructuring alternatives as the result of a $1.6 billion judgment issued by the Supreme Court of New York on October 18, 2024, and later entered on October 31, 2024, against CCA and two non-debtor affiliates, CSCEC (Bahamas) Ltd. and CCA Bahamas, Ltd., and in favor of BML Properties Ltd. ("**BMLP**") in a lawsuit brought by BMLP (the "**Baha Mar Litigation**").

16.     Following my appointment to the Board, the Board and CSCEC Holding, as CCA's sole shareholder, created the Special Committee, of which I am the sole member, to, among other things, review and evaluate the terms and conditions and determine the advisability of potential restructuring alternatives.  The resolutions memorializing the creation of the Special Committee are attached hereto as **Exhibit D**.

17.     Shortly after my appointment to the Board as an independent director, CCA commenced a DIP financing process, including identifying potential providers of debtor-in-possession financing ("**DIP Financing**").  Among other parties, CSCEC Holding was identified as a potential provider to CCA of DIP Financing.  Because other CCA board members also hold positions at CSCEC Holding, they recused themselves from decision-making related to the DIP Financing as well as from negotiations with CSCEC Holding and its representatives about the terms on which it would be willing to lend.  All decision-making authority on behalf of the Debtor with respect to the DIP Financing was delegated to me in my capacity as a member of the Special Committee.

18.     On December 22, 2024, having reviewed materials presented by CCA's management and advisors regarding its liabilities and liquidity situation, the restructuring alternatives available to it, available alternatives for financing, and the impact of the foregoing on CCA's businesses, the Special Committee determined that it was desirable and in the best interests of CCA and its creditors that a petition for chapter 11 relief be filed in this Court.  The Written Consent of the Special Committee dated December 22, 2024 is attached hereto as **Exhibit E**.

### Special Committee

19.     Any transactions related to a restructuring alternative in which the Special Committee determines there is a conflict must be approved by the Special Committee, and the Special Committee has the power to reject any transactions related to a restructuring alternative that arises in connection with a conflict.  Should other members of the Board recuse themselves due to a conflict, the Special Committee constitutes a quorum and can evaluate and approve any transaction in connection with a restructuring alternative.

20.     As an independent director and member of the Special Committee, I have a fiduciary duty to maximize the value of CCA's estate for the benefit of all its stakeholders.  I take my fiduciary duties as an independent director seriously and have acted at all times in accordance with those duties.  As the sole member of the Special Committee, my role is not to merely "rubber stamp" the proposals of CCA, CSCEC Holding, or their advisors.  As independent director, I have utilized my knowledge and expertise in the restructuring industry to conduct an impartial assessment of each matter presented to me.  In my capacity as an independent director both for CCA and for other companies, I have performed due diligence on, considered, questioned, pushed back on and negotiated the terms of potential transactions.  I have not hesitated to do the same in my role on the Special Committee and will continue to do so in the future to the extent I am presented with a proposed action or transaction that could be improved to better serve the interests of the CCA.

21.     I have attended regular Board meetings along with the other Board members, Debevoise, and CCA's other advisors, as well as meetings of the Special Committee which only myself and Debevoise attended.  As is common in my other independent director engagements, including those in which a potential restructuring alternative was considered by a special committee of independent directors, the full Board held regular meetings in which all members of the Board were provided with updates regarding the chapter 11 process as well as the DIP Financing process.  However, as the sole member of the Special Committee, I was the only Board member with decision-making authority on those issues, and any deliberation and decision-making were performed by the Special Committee in its sole discretion.

22.     As I have done in my other engagements as an independent director, I have consulted with the Debtor's counsel and financial advisors in executing my duties as independent

7

director.  At this time, I have not hired my own legal counsel in connection with my role on the Special Committee.  In my view, this has not yet become necessary.  Should a conflict of interest arise vis-à-vis CCA or CCA's outside counsel or other advisors, on the one hand, and the Special Committee, on the other hand, I will engage outside advisors to the Special Committee.

23.     To date, I have not initiated an investigation of potential claims against CSCEC Holding or other affiliates or officers of CCA because such an investigation has not become necessary.  In particular, the DIP Financing does not contain or provide for broad releases of CSCEC Holding; the releases in the proposed DIP Financing are related to the financing itself. Accordingly, no claims of CCA unrelated to the DIP Financing as against CSCEC Holding (or any other entity) would be released by the DIP Financing, and an investigation would therefore be an imprudent use of estate resources at this time.  Should the need arise to initiate such an investigation, I will hire outside counsel to represent and advise the Special Committee as needed in that regard.

### The DIP Financing

24.     I participated in discussions led by BDO regarding potential DIP Financing, where it was made clear to me that CCA needed liquidity to finance its ongoing operations and administrative expenses during a potential chapter 11 case.  I relied on my extensive experience with these types of transactions, as well as BDO's expertise as informed by relevant information supplied by CCA personnel about CCA's business and prospects, in assessing the necessity and fairness of the proposed DIP Financing.  I was involved in, and directed, both the marketing of the potential DIP Financing to potential third-party lenders and the negotiation of the DIP Financing between CCA and CSCEC Holding.

25.     With respect to the DIP Financing, CCA and CSCEC Holding each engaged outside counsel to negotiate the potential DIP Financing:  Debevoise and Lowenstein Sandler LLP ("**Lowenstein**"), respectively.  I also understand that a businessperson at CSCEC Holding was identified to work with Lowenstein with respect to the potential DIP Financing.  The fact that CCA and CSCEC Holding each engaged outside counsel to lead the DIP negotiations here gave me comfort that each party was well and independently represented and that the agreed-upon terms of the DIP Financing were the product of a negotiated, arms-length transaction.

26.     At my direction, BDO led CCA's effort to determine whether potential third-party funding sources might exist that would provide comparable or more favorable terms.  In consultation with Debevoise and CCA personnel for certain information about CCA's business, BDO prepared, and I reviewed and ultimately approved, marketing materials including a "teaser," which was provided to potential lenders who expressed interest in the potential DIP Financing opportunity, and a Confidential Information Memorandum, which was provided to certain potential lenders who requested more detailed information and executed a non-disclosure agreement with CCA.

27.     BDO created a list of potential lenders based on their research and experience with lenders who provide facilities of this type.  BDO consulted with me on this list, and as part of this effort, I introduced BDO to a contact at another potential lender to discuss the DIP Financing opportunity.  Over the past several months, BDO engaged with representatives of those potential funding sources to confirm whether there is, in fact, any market interest in providing DIP financing to CCA on terms more favorable than those of the proposed DIP Financing.  To date, potential lenders with whom BDO engaged rejected the potential opportunity for a variety of reasons, and

no potential lender has been identified that would be willing to lend on the same or better terms than those available to CCA from CSCEC Holding.

28.     Each of the terms and conditions of the DIP Financing ultimately agreed upon with CSCEC Holding were negotiated by CCA and its advisors, under my direction and oversight.  In particular, negotiations over the terms and conditions of the DIP Financing with CSCEC Holding have been primarily conducted through Debevoise, as CCA's legal advisor, with support from BDO, on the one hand, and Lowenstein, as CSCEC Holding's legal advisor, on the other.  I approved of the material terms and conditions of the proposed DIP Financing and was consulted throughout the negotiation process.

29.     I understand that during the negotiations, Debevoise, on behalf of CCA, asked CSCEC Holding if it would consider providing the DIP Financing on an unsecured basis. Historically, CSCEC Holding had provided unsecured financing to CCA.  However, Lowenstein, on behalf of CSCEC Holding, rejected that proposal and insisted that the DIP Financing be provided on a secured basis, as is customary in financings of this type.  Based on the lack of interest from potential third-party lenders and the other favorable features of the terms of the DIP Financing, as well as my extensive experience with these types of transactions, I concluded that further attempts to obtain DIP financing from CSCEC Holding on an unsecured basis would not be successful.

30.     After an extensive negotiation between the parties and close consideration of the proposed terms and conditions, the Special Committee approved of the final proposed DIP Financing and accompanying credit agreement by and among CCA and CSCEC Holding in the aggregate amount of $40 million as in the best interests of CCA and its stakeholders.

## <u>Conclusion</u>

31.     I believe that the DIP Financing is a critical and necessary step for CCA to achieve

a successful and smooth execution of the Debtor's chapter 11 case.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed on February 12, 2025.

By: */s/ Elizabeth Abrams*
Elizabeth Abrams
Managing Member
Spruce Brook Partners

**EXHIBIT A**

# ELIZABETH ABRAMS

**127 W 83rd Street, Unit 1012**
**New York, NY 10024**
**t:** 646.335.5139
**e:** abrams@sprucebrookpartners.com

**PROFILE**

Elizabeth Abrams is an independent director with more than 20 years of experience in corporate finance, working with boards, investors, and management teams to develop strategies for navigating transformational changes. Her board representation and transaction experience spans across industries and company stages, from inception, high growth and capital raising to mature company M&A and restructuring.

Elizabeth is a commercial problem-solver, driven to enable companies to address complex financial and strategic problems and thrive in evolving operating environments.  She drives financial improvement for companies through optimizing balance sheets, raising debt and equity capital, managing and improving liquidity, driving growth, and negotiating with lenders, creditors, and sponsors.

Elizabeth spent the majority of her career as an investment banker, most recently as a Senior Managing Director at Guggenheim Securities, where she advised stressed and distressed companies and their stakeholders to execute value-maximizing restructuring and liability management transactions.  She also served as a CFO for an AI-driven growth stage healthcare company, building the finance function from the ground up, developing an FP&A function, and implementing rigorous financial reporting, systems, and processes.

- Work closely with senior management, investors, and board members with clear and thoughtful communication and strategic advice
- Deep experience structuring and enhancing balance sheets to optimize investor outcomes, including raising debt and equity capital, selling companies and select assets, negotiating financing agreements and amendments, optimizing liquidity, and negotiating comprehensive restructuring and liability management transactions, often with multiple stakeholders
- Experience across sectors including real estate, healthcare, power, business services, SaaS, industrials, TMT, chemicals, specialty finance, and transportation & logistics
- Knowledge across financial products and markets, including public and private debt and equity, securitizations, and insurance
- Seasoned executive who has built teams, overseen broad talent decisions, negotiated vendor and customer contracts, and other day-to-day operational decisions

Elizabeth has served as a testifying expert in for clients in contested matters.  She has been involved with numerous contested restructuring transactions, working collaboratively to ensure optimal outcomes for clients.

Elizabeth has lectured on restructuring topics at the University of Virginia and served on many industry panels discussing various topics in corporate governance and corporate finance.  In addition, during her time at Guggenheim, Elizabeth served on the firm's valuation committee, which oversees all valuations delivered to support restructuring plans, M&A transactions and fairness opinions.  Elizabeth is a member of the National Association of Corporate Directors (NACD).  Elizabeth has held FINRA licenses including Series 7, 24, 50, 63, and 79.  She resides in New York City with her family.

Confidential

# ELIZABETH ABRAMS

## BOARD EXPERIENCE

**Spruce Brook Partners**

2023 - Present

**Managing Member**

- Independent director providing thoughtful governance for companies executing complex financial transactions and experiencing transformative change
- Served as independent director for companies in various industries. Current or recently completed mandates include:
  - Clinical Care Medical Center (healthcare provider)
  - Cornerstone Chemical Company
  - ECRM (business services)
  - Empire Today (home furnishing)
  - ExacTech (medical devices)
  - Heritage Power (power generation; board chair, member of audit cte)
  - Transforce (trucking education and recruitment)
- Leveraging twenty years of experience with companies at all stages of the business life cycle, work closely with board members and management teams through transformative periods, optimizing governance, aligning incentives, and executing financings, liability management, capital markets and M&A transactions

## OTHER PROFESSIONAL EXPERIENCE

**K Health**

2021 - 2022

**Chief Financial Officer**

- Senior finance leader for AI-driven venture-backed healthcare company
- Company's first CFO, hired to build processes and team, understand key business drivers and bring financial rigor to high-growth environment
- Worked with members of senior management to establish key business performance indicators and evaluate and report against core business drivers
- Rebuilt projection models for direct-to-consumer and payer business segments
- Established weekly cash reporting and monitoring
- Reported financial results to board of directors

**Guggenheim Securities**

2018 - 2021

**Senior Managing Director**

- Advised companies and investors by designing, originating and executing complex restructuring, M&A, and financing transactions
- Served on firm's valuation committee, which oversaw all public company M&A valuations, as well as restructuring valuations performed by firm
- Designed wildfire insurance fund, codified in state legislation, for electric utility industry in California while negotiating PG&E debt restructuring in conjunction with California Governor Gavin Newsom and gubernatorial energy team
- Represented Washington Prime Group (retail real estate owner/operator) in $3.7 billion restructuring
- Co-led women's mentoring group to foster development and retention of female bankers at firm

**Millstein & Co.**

*Financial advisory firm advising clients on complex corporate and public finance issues*

*2012 – 2018*

*(Sold to Guggenheim Securities in 2018)*

**Managing Director**

- Originated, structured, and executed complex restructuring, capital markets, and M&A transactions
- Represented Commonwealth of Puerto Rico and served as testifying expert in litigation related to restructuring of Puerto Rico's $70+ bn debt load
- Represented ad hoc first lien committee of Vistra Energy (f/k/a TCEH) ($25.6 billion of debt) in restructuring of Energy Future Holdings
- Oversaw day-to-day operational and personnel decisions alongside founder, CFO, and other members of senior leadership team
- Developed firm growth strategy, established systems and processes for overseeing firm management from inception onward, hired new bankers, determined compensation and evaluated potential exit opportunities, including successful exit through sale of firm to Guggenheim

*Full transaction experience available upon request*

*Elizabeth Abrams*
*Page 2*

CCA-BK0017871

# ELIZABETH ABRAMS

## OTHER PROFESSIONAL EXPERIENCE (CONT'D)

**Miller Buckfire & Co.**

*Investment bank providing restructuring, financing, and M&A advice to companies and their stakeholders*

2003 - 2012

**Director**
- Led teams to design and execute financing, restructuring, and M&A transactions
- Negotiated new financings, amendments, comprehensive deleveraging transactions, exchanges and sales with lenders, creditors, equity investors and strategic and financial buyers
- Prospected for new client opportunities
- Built firm-wide analyst recruiting program and oversaw recruiting of all analysts
- Represented General Growth Properties, Calpine Corporation, American Capital and European Capital, and Dura Automotive among others in their restructurings

## EDUCATION

**University of Pennsylvania**

Jerome Fisher Program in Management & Technology (M&T) Dual Degree
- Bachelor of Science, Economics, The Wharton School
- Bachelor of Applied Science, School of Engineering and Applied Science

Awards
- Beverly Kushinsky Virany Memorial Award for demonstrated leadership, scholarship and good character
- Michele Huber & Brian D. Giles Memorial Award for the graduating senior in the Management and Technology Program who best exemplifies the qualities of academic excellence, leadership, service, concern for humankind and love of the University

## AWARDS, RECOGNITIONS AND CERTIFICATIONS

- Previously held FINRA Series 7, 24, 50, 63, and 79 licenses
- Member of the National Association of Corporate Directors
- Named a "Person to Watch" by Turnarounds and Workouts Magazine
- Awarded Next Generation National Human Relations Award from American Jewish Committee (Financial Services Division)
- Profiled by Bloomberg: (http://www.bloomberg.com/news/2014-05-02/millstein-s-abrams-juggles-txu-to-puerto-rico-as-workouts-scarce.html)
- Multiple transactions awarded "Transaction of the Year" by Turnaround Management Association

## NON PROFIT AND OTHER EXPERIENCE

**Population Council**
$40+ million non-profit
2024 – Present

**Trustee**
Member of Audit Committee

**Her Justice**
$7+ million non-profit
2018 – Present

**Board Member**
Member of Audit & Finance Committee

**Animal Lighthouse Rescue**
Non-profit dog rescue
2018 - Present

**Board Member**

**NYC Coop Board**
2014-18; 2021 – Present

**Treasurer and Coop Board Member**

## OTHER

- Dog lover with two rescue dogs from Puerto Rico
- Enjoy cooking, rowing, and personal fitness

*Elizabeth Abrams*
*Page 3*

**EXHIBIT B**

## MINUTES OF THE SPECIAL MEETING OF THE STOCKHOLDER OF

## CCA CONSTRUCTION, INC.

A Special Meeting in 2024 of the Stockholder of CCA CONSTRUCTION, INC., a Delaware corporation (the "**Company**") was held on October 21, 2024, by correspondence conference whereby all participants could simultaneously hear/communicate with each other. Notice of this meeting was duly waived.

There were present the following persons:

Yan Wei, Authorized Representative of the Sole Stockholder, CSCEC Holding Company, Inc.

Jun Li, who recorded the minutes of the meeting.

A quorum was present.

The meeting was duly called and held.

WHEREAS, pursuant to Section XI of the Board of Directors Governance Policy, dated as of April 25, 2016, the election of directors and increase or decrease in number of directors require approval at the Stockholder Meeting of the Company.

WHEREAS, the Stockholder of the Company (the "Stockholder") desires to appoint Elizabeth Abrams, who is independent and not affiliated with the Company or any of its affiliates, as an additional Director.

WHEREAS, the Stockholder has determined that it is appropriate, advisable and in the best interests of the Company to increase the size of the Company's Board of Directors (the "Board") and appoint Ms. Abrams as a Director.

WHEREAS, In connection with the election of Elizabeth Abrams to the Board, the Stockholder has determined that it is in the best interests of the Company and its direct and indirect shareholders to pay her the compensation set out in the October 21, 2024, agreement with Elizabeth Abrams (the "Independent Director Agreement", attached hereto as Exhibit A) for her Board service beginning on October 21, 2024, except that her compensation for any month will be prorated based on the time of her service on the Board (the "Independent Director Compensation").

## BE IT

**RESOLVED**, that Elizabeth Abrams is hereby elected as a member of the Board, effective immediately, such that the following named individuals with authorized numbers of votes opposite to their names constitute the entire Board, to serve until their successors are duly elected and qualified at the next annual meeting of the member, unless they resign or are otherwise removed or disqualified prior to the next annual meeting:

CCA-BK0003098

| Yan Wei | One (1) Vote |
|---|---|
| Elizabeth Abrams | One (1) Vote |
| Lilin Cao | One (1) Vote |
| Jingtao Yang | One (1) Vote |

And it is further

**RESOLVED,** that having considered the matters referred to above, the approval of the Independent Director Compensation is in the best interests of the Company, its subsidiaries and its direct and indirect shareholders and is expected to promote the success of the Company and its subsidiaries for the benefit of its direct and indirect shareholders as a whole; and it is further

**RESOLVED,** the terms of the Independent Director Compensation, shall be and are hereby approved; and it is further

**RESOLVED,** the Company is authorized to enter into the Independent Director Agreement; and it is further

**RESOLVED,** any Director or officer of the Company be and, each of them hereby is, authorized, on behalf of the Company, to notify Elizabeth Abrams of her appointment and approval of the Independent Director Compensation; and it is further

**RESOLVED,** any officer of the Company or other person acting at the direction of any such officer (each, an "Authorized Officer") be, and each of them hereby is, authorized, directed and empowered, in the name and on behalf of the Company to execute, deliver and perform, as applicable, any and all other agreements, amendments, applications, certificates, instruments, consents, acknowledgements and other ancillary documents contemplated by, related to or in connection with the foregoing resolutions, in such form and with such terms and provisions as any such Authorized Officer may approve, and to take such other actions as any such Authorized Officer shall deem necessary or advisable to carry out the intent and purpose of the foregoing resolutions, such execution, delivery, performance and taking of such actions to constitute conclusive evidence of such Authorized Officer's approval of the necessity and advisability of such action.

There being no further business to come before the meeting, and the same was adjourned.

CSCEC Holding Company, Inc., Sole Stockholder

By: _____

Yan Wei, Authorized Representative

**EXHIBIT C**

## INDEPENDENT DIRECTOR AGREEMENT

THIS DIRECTOR AGREEMENT (the "Agreement") is made as of October 21, 2024, by and among CCA Construction, Inc., a Delaware corporation (the "Company"), and **M. Elizabeth Abrams** ("Director").

### BACKGROUND

**WHEREAS,** Director has no prior or current affiliation, material business, or relationship, direct or indirect, with the Company or its affiliates, or its equity holders and, therefore, is capable of being an independent and disinterested director of the Company.

**WHEREAS,** the Company desires and has requested that Director serve as an independent and disinterested director of the Company.

**WHEREAS,** the Company and Director are entering into this Agreement to induce Director to serve in the capacity set forth above and to set forth certain understandings between the parties.

### AGREEMENT

**NOW, THEREFORE**, in consideration of the mutual agreements and promises contained herein, and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Company and Director hereby agree as follows:

1.      **DUTIES**.  Director agrees to (i) serve as an independent and disinterested director of the Company and to be available to perform the duties consistent with such position pursuant to the entity's organization documents (all as amended from time to time, the "Organizational Documents") and the laws of such Organizational Documents; (ii) serve as a member of the Board of Managers of any of the Company's subsidiaries (each a "Subsidiary Board of Managers"), as may be requested from time to time by the Company's Board of Managers; and (iii) serve as a member of one or more committees of the Board of Directors or a Subsidiary Board of Managers as may be requested from time to time by the Company or a majority of the Board of Directors and for which Director is qualified to serve.  Director agrees to devote as much time as is reasonably necessary to perform completely the duties as an independent and disinterested director of the Company.  By execution of this Agreement, Director accepts her appointment or election as an independent and disinterested director of the Company and agrees to serve in such capacity until her successor is duly elected and qualified or until the expiration or termination of this Agreement or Director's earlier death, incapacitation, resignation or removal.  The parties hereto acknowledge and agree that Director is being engaged to serve as an independent and disinterested director of the Company only and is not being engaged to serve, and shall not serve, the Company in any other capacity.

2.      **TERM.**   Director may resign or be removed at any time, with or without cause, in accordance with and to the extent permitted by the Organizational Documents, in which event this Agreement shall terminate as of the date of such resignation or removal, except as specifically provided herein.

3.      **COMPENSATION**.  For all services to be rendered by Director hereunder, and so long as Director has not been removed as a director of the Company, the Company agrees to pay, or to cause one or more of its subsidiaries to pay a monthly fee of $40,000 for each month, payable to

1

                                                                                           CCA-BK0003088

Spruce Brook Partners, LLC or otherwise at the Director's direction, without pro ration, and without the need for the Director to provide an invoice, payable upon execution of this Agreement and in advance each month before the first day of each month thereafter; provided that such fee shall be due and payable for a minimum of six months, without regard to Paragraph 2 above. In addition, Director shall be entitled to a $7,500 per diem payable for days on which Director devotes more than four hours of service as a Director to activities outside the scope of normal director duties, including, without limitation, being deposed, preparing for deposition, or appearing as (or preparing to appear as) a witness in court.

4.    **EXPENSES**.  In addition to the compensation provided in Section 3 hereof, the Company will reimburse or will cause one or more of its subsidiaries to reimburse Director for reasonable and documented out-of-pocket expenses incurred in good faith in the performance of Director's duties for the Company, provided, that Director shall obtain preapproval from Company prior to incurring any individual expense in excess of $2,000.  Such payments shall be made by the Company or one or more of its subsidiaries upon submission by Director of a statement itemizing the expenses incurred.

5.    **CONFIDENTIALITY**.  The Company and Director each acknowledge that in order for Director to perform her duties as an independent and disinterested director of the Company, Director shall necessarily be obtaining access to certain confidential information concerning the Company and its affiliates, including, but not limited to business methods, information systems, financial data and strategic plans which are unique assets of the Company or its affiliates (whether or not marked as confidential or proprietary, "Confidential Information").  Director covenants that she shall not, either directly or indirectly, in any manner, utilize or disclose to any person, firm, corporation, association or other entity any Confidential Information, except (i) as required by law, (ii) pursuant to a subpoena or order issued by a court, governmental body, agency or official, or (iii) to the extent such information (A) is generally known to the public, (B) was known to Director prior to its disclosure to Director by the Company, (C) was obtained by Director from a third party which, to Director's knowledge, was not prohibited from disclosing such information to Director pursuant to any contractual, legal or fiduciary obligation, or (D) was independently derived by Director without any use of Confidential Information.  Director shall provide notice to the Company as is reasonably practicable prior to any disclosure under (i) or (ii) above and shall cooperate with the Company to limit disclosure of Confidential Information to the extent reasonably practicable. This Section 5 shall continue in effect after Director has ceased acting as an independent and disinterested director of the Company.

6.    **INDEMNIFICATION**.

(a)    **Certain Definitions.**  For purposes of this Section 6, the term:

"**Applicable Law**" means the laws of the state of Delaware.

"**Expenses**" means all expenses, liabilities and losses (including, without limitation, attorneys' fees, retainers, expert and witness fees, disbursements and expenses of counsel, judgments, fines, excise taxes or penalties and amounts paid or to be paid in settlement) actually and reasonably incurred or suffered by Director or on Director's behalf in connection with a Proceeding.

"**Proceeding**" means any threatened, pending, actual or completed action, suit, inquiry or proceeding, whether civil, criminal, administrative or investigative, whether public or private, and,

Confidential

CCA-BK0003089

including any such threatened, pending, actual or completed action, suit, inquiry or proceeding by or in the right of the Company or any of its subsidiaries (collectively, the "Companies").

(b)   **Indemnification.**   In the event that Director was or is made a party or is threatened to be made a party to or is involved (including, without limitation, as a witness) in any Proceeding by reason of the fact that Director or a person of whom Director is the legal representative of is or was an independent and disinterested director of any of the Companies (whether before or after the date hereof) and, whether the basis of such Proceeding is an alleged action in an official capacity as an independent and disinterested director or in any other capacity while serving as an independent and disinterested director or manager of any of the Companies, the Companies shall, jointly and severally, indemnify and hold harmless Director to the fullest extent authorized by Applicable Law or any other applicable law or rule, but no less than to the extent set forth herein, against all Expenses; *provided, however*, that the Companies shall indemnify Director only if Director did not engage in fraud, gross negligence or willful misconduct and, in the case of criminal Proceedings, Director had no reasonable cause to believe her conduct was unlawful; and *provided, further*, that the Companies shall, jointly and severally, indemnify Director in connection with a Proceeding (or claim or part thereof) initiated by Director only if (i) such Proceeding is a suit or other action seeking to enforce Director's right to advancement of expenses and/or indemnification under this Agreement or (ii) such Proceeding (or claim or part thereof) was authorized by the directors and/or managers of the Companies.

(c)   **Presumptions.**   In the event that, under Applicable Law, the entitlement of Director to be indemnified hereunder shall depend upon whether Director shall have acted in good faith and in a manner Director reasonably believed to be in or not opposed to the best interests of the Companies and with respect to criminal Proceedings, had no reasonable cause to believe Director's conduct was unlawful, or shall have acted in accordance with some other defined standard of conduct, or whether fees and disbursements of counsel and other costs and amounts are reasonable, the burden of proof of establishing that Director has not acted in accordance with such standard and that such costs and amounts are unreasonable shall rest with the Companies, and Director shall be presumed to have acted in accordance with such standard, such costs and amounts shall be conclusively presumed to be reasonable and Director shall be entitled to indemnification unless, and only unless, based upon clear and convincing evidence, it shall be determined by a court of competent jurisdiction (after exhaustion or expiration of the time for filing of all appeals) that Director has not met such standard or, with respect to the amount of indemnification, that such costs and amounts are not reasonable (in which case Director shall be indemnified to the extent such costs and amounts are determined by such court to be reasonable).

In addition, and without in any way limiting the provisions of this Section 6(c), Director shall be deemed to have acted in good faith and in a manner Director reasonably believed to be in or not opposed to the best interests of the Companies or, with respect to any criminal Proceeding to have had no reasonable cause to believe Director's conduct was unlawful, if Director's action is based on (i) information supplied to Director by the officers of the Companies in the course of her duties, (ii) the advice of legal counsel for Director or for the Companies or (iii) information or records given or reports made to the Companies by an independent certified public accountant, an appraiser, a financial advisor, an investment banker or other expert selected with reasonable care by the Companies.

Confidential

CCA-BK0003090

The provisions of this Section 6(c) shall not be deemed to be exclusive or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct, if applicable, under Applicable Law.

(d)     **Indemnification When Wholly or Partly Successful.**  Without limiting the scope of indemnification provided in Section 6(b), to the extent that Director is a party to and is successful, on the merits or otherwise, in any Proceeding, Director shall be indemnified to the maximum extent permitted by Applicable Law against all Expenses.  If Director is not wholly successful in a Proceeding but is successful, on the merits or otherwise, as to one or more but less than all claims, issues or matters in such Proceeding, the Companies shall, jointly and severally, indemnify Director against all Expenses actually and reasonably incurred by Director and on Director's behalf in connection with each successfully resolved claim, issue or matter, and shall otherwise indemnify Director to the extent required by Section 6(b).  All Expenses shall be presumed to be have been incurred with respect to successfully resolved claims, issues and matters unless, and only unless, based upon clear and convincing evidence (with the burden of proof being on the Companies), it shall be determined by a court of competent jurisdiction (after exhaustion or expiration of the time for filing of all appeals) that a portion of such Expenses were incurred with respect to unsuccessfully resolved claims, issues or matters.  For purposes of this Section 6(d) and without limitation, the termination of any claim, issue or matter in any Proceeding by dismissal, with or without prejudice, shall be deemed to be a successful result as to such claim, issue or matter.

(e)     **Suit to Recover Indemnification.**   If a claim under Section 6(b) or Section 6(h) of this Agreement is not paid in full by the Companies within thirty days after a written claim has been received by the Companies, Director may at any time thereafter bring suit against the Companies to recover the unpaid amount of the claim.  It shall be a defense to any such suit (other than a suit brought to enforce a claim for expenses incurred in defending any Proceeding in advance of its final disposition where the required undertaking has been tendered to the Companies) that Director has not met the standards of conduct, if applicable, which make it permissible under Applicable Law for the Companies to indemnify Director for the amount claimed, but the burden of proving such defense and its applicability shall be on the Companies and may be met only by clear and convincing evidence.  Neither the failure of the Companies (including their directors (or equivalent) or equity holders) to have made a determination prior to the commencement of such suit that indemnification of Director is proper in the circumstances because Director has met the standard of conduct, if applicable, under Applicable Law, nor an actual determination by the Companies (including their managers (or equivalent) or equity holders) that Director has not met such applicable standard of conduct, shall be a defense to the suit or create a presumption that Director has not met the applicable standard of conduct.  The expenses incurred by Director in bringing such suit (whether or not Director is successful) shall be paid by the Companies unless a court of competent jurisdiction determines that each of the material assertions made by Director in such suit was not made in good faith and was frivolous.

(f)     **Rights Not Exclusive; Rights Continue.**  The right to indemnification and the payment of expenses incurred in defending any Proceeding in advance of its final disposition conferred in this Agreement shall not be exclusive of, or limit in any manner whatsoever, any other right which Director may have or hereafter acquire under any statute, provision of the Organizational Documents, agreement, vote of equity holders or otherwise. The indemnification, expense advancement and other rights of Director herein shall continue after Director ceases to be an independent and disinterested director of the Company for so long as Director may be subject to any

4

possible claim for which he would be entitled to indemnification under this Agreement or otherwise as a matter of law, and shall not be amended, modified, terminated, revoked or otherwise altered without Director's prior written consent.

(g)    **Insurance.**  The Company or one of its affiliates (which, in the case of an affiliate, shall include coverage of directors of the Company) shall maintain insurance to protect the Company and any director, manager or trustee of the Company against any expense, liability or loss, and such insurance shall cover Director to at least the same extent as any other director of the Company; *provided that* the Company shall maintain insurance in form substantially similar to, and in amount not less than, the insurance maintained by the Company as of the date hereof, a summary of which is attached hereto as Exhibit A.  Director shall have the right to receive a copy of any policy for such insurance upon request.

(h)    **Advancement of Defense Costs.**    Notwithstanding anything in the Organizational Documents to the contrary, the Company shall also promptly pay Director the expenses actually and reasonably incurred in defending any Proceeding in advance of its final disposition without requiring any preliminary determination of the ultimate entitlement of Director to indemnification.

(i)    **Subrogation.**  In the event of payment under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of Director, who shall, at the Company's expense, execute all papers required and take all action necessary to secure such rights, including the execution of such documents necessary to enable the Company effectively to bring suit to enforce such rights.

(j)    **No Duplication of Payments.**  The Company shall not be liable under this Agreement to make any payment in connection with any Proceeding against Director to the extent Director has otherwise actually received payment (under any insurance policy, contract, agreement, the Organizational Documents, or otherwise) of the amounts otherwise indemnifiable hereunder.

(k)    **Settlements**.  The Director will not, without the prior written consent of the Company (not be unreasonably withheld) and the insurer, (i) settle or compromise any claim, (ii) permit a default judgment, or (iii) consent to any settlement or other such agreement or the entry of any judgment, in all of the foregoing cases in connection with or related to any Proceeding with respect to which indemnification or contribution may be sought hereunder (whether or not the Director is an actual or potential party to such Proceeding) or as to which any allegation of wrongful acts or omissions by the Director is not denied.

(l)    **Contribution.**    If the indemnification provided in Section 6(b) and the advancement provided in Section 6(h) should under Applicable Law be unenforceable or insufficient to hold Director harmless in respect of any and all Expenses with respect to any Proceeding, then the Companies shall, subject to the provisions of this Section 6(k) and for purposes of this Section 6(k) only, upon written notice from Director, be treated as if they were parties who are or were threatened to be made parties to such Proceeding (if not already parties), and the Companies shall contribute to Director the amount of Expenses incurred by Director in such proportion as is appropriate to reflect the relative benefits accruing to the Companies and all of their directors, trustees, managers, officers, employees and agents (other than Director) treated as one entity on the one hand, and Director on the other, which arose out of the event(s) underlying such Proceeding, and the relative fault of the Companies and all of their directors, trustees, managers, officers,

5

employees and agents (other than Director) treated as one entity on the one hand, and Director on the other, in connection with such event(s), as well as any other relevant equitable considerations, provided that in no event shall Expenses incurred by Director exceed the amount of cash payments actually made to Director pursuant to paragraph 3.  No provision of this Section 6(k) shall (i) operate to create a right of contribution in favor of Director if it is judicially determined that, with respect to any Proceeding, Director engaged in fraud, willful misconduct or gross negligence or (ii) limit Director's rights to indemnification and advancement of Expenses, whether under this Agreement or otherwise.

The Companies hereby waive any right of contribution from Director for Expenses incurred by the Companies with respect to any Proceeding in which the Companies are or are threatened to be made a party.  The Companies shall not enter into any settlement of any Proceeding in which the Companies are jointly liable with Director (or would be if joined in such Proceeding) unless such settlement provides for a full and final release of all claims asserted against Director and does not contain an admission of wrongdoing by Director.

7.      **INFORMATION.**  The Company shall provide Director with financial, operational and legal information, as reasonably requested, and shall make its management, advisors and counsel available to discuss the business and operations of the Company upon Director's reasonable request. To the best of the Company's knowledge, the information with respect to the Company will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  The Company shall advise the Director of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company that occurs during the term of this agreement.

8.      **EFFECT OF WAIVER**.  The waiver by either party of the breach of any provision of this Agreement shall not operate as or be construed as a waiver of any subsequent breach thereof.

9.      **GOVERNING LAW**.  This Agreement shall be interpreted in accordance with, and the rights of the parties hereto shall be determined by, the laws of the state of Delaware without reference to its conflicts of laws principles.

10.      **ASSIGNMENT**.  The rights and benefits of the Company under this Agreement shall not be transferable except by operation of law without Director's consent, and all the covenants and agreements hereunder shall inure to the benefit of, and be enforceable by or against, its successors and assigns.  The Company shall not affect any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein without Director's consent. The duties and obligations of Director under this Agreement are personal and therefore Director may not assign any right or duty under this Agreement without the prior written consent of the Company.

11.      **BINDING EFFECT; SUCCESSORS AND ASSIGNS.**  This Agreement shall be binding upon and inure to the benefit of and be enforceable by each of the parties hereto and their respective successors, assigns (including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business or assets of the Company), heirs and personal legal representatives.

6

12.    **DISCLOSURE**.  Director may, at her option and expense and after announcement of any transaction or following the end of the term of this agreement, publicize her role for the Company (which may include the reproduction of the logo of the Company and a hyperlink to the website of the Company) in her marketing materials or other advertising materials as she may choose, stating that she has acted as a Director to the Company.

13.    **SEVERABILITY; HEADINGS.**  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid as applied to any fact or circumstance, it shall be modified by the minimum amount necessary to render it valid, and any such invalidity shall not affect any other provision, or the same provision as applied to any other fact or circumstance.  The headings used in this Agreement are for convenience only and shall not be construed to limit or define the scope of any Section or provision.

14.    **COUNTERPARTS; AMENDMENT.**  This Agreement may be executed in one or more counterparts, each of which shall be considered one and the same agreement.  No amendment to this Agreement shall be effective unless in writing signed by each of the parties hereto.

*[Signature page follows]*

7

CCA-BK0003094

The parties hereto have caused this Agreement to be effective as of October 21, 2024.

**CCA CONSTRUCTION, INC.**

By: _____
Name: James McMahn
Title: General Counsel

**DIRECTOR**

By: _____
Name:  **M. Elizabeth Abrams**

8

The parties hereto have caused this Agreement to be effective as of October 21, 2024.

**CCA CONSTRUCTION, INC.**

By:_____
   Name:
   Title:

**DIRECTOR**

By:_____
Name: **M. Elizabeth Abrams**

8

CCA-BK0003096

## EXHIBIT A

## SUMMARY OF INSURANCE COVERAGE

| Carrier | D&O Limits of Liability (includes Side A, B,C and D) | |
|---|---|---|
| AIG (current limit) | $2,000,000 plus additional $500,000 Side A | |
| AIG (increased limit) | $3,000,000 xs $2,000,000 | |
| Chubb | $5,000,000 xs $5,000,000 | |
| Axis | $5,000,000 xs $10,000,000 | |
| Beazley | $5,000,000 xs $15,000,000 **Side – A only** | |
| **Total** | **$18,000,000 xs $2,000,000** | |

## NOTES:

The current primary policy provides $2,000,000 aggregate limit covering D&O, Employment Practices, Employed Lawyers, and Fiduciary Liability, be noted there is additional $500,000 of D&O Side A coverage added by Endorsement.

The new added limits are for D&O coverage exclusively. AIG $3M - Chubb $5M - Axis $5M provide Side A, B, C and D. Beazley $5M provides Side A only.

9

                                                                 CCA-BK0003097

**EXHIBIT D**

## WRITTEN CONSENT OF THE SOLE STOCKHOLDER OF

## CCA CONSTRUCTION, INC.

Dated November 2, 2024

The undersigned, CSCEC HOLDING COMPANY, INC., a Delaware corporation, being the sole stockholder (the "Sole Stockholder") of CCA CONSTRUCTION, INC., a Delaware corporation (the "Company"), does hereby waive any required notice and consents to the following resolutions as if the same had been duly adopted at a meeting of the Sole Stockholder of the Company and does hereby declare that said action shall be effective as of the date hereof:

WHEREAS, as previously discussed and considered by the Company and the Sole Stockholder of the Company, it has been determined that the Company desires to consider and evaluate the liabilities and liquidity situation of the Company, the short and long term prospects of the Company, and the restructuring and strategic alternatives available to it, including, but not limited to: (i) an equity or debt (including debtor in possession) financing; (ii) a recapitalization or a refinancing, amendment or exchange of, or tender offer for, the Company's existing indebtedness or any of its capital stock, in each case, whether in-court or out-of-court and/or whether pursuant to a pre-negotiated or pre-planned restructuring plan or proposal or otherwise; (iii) seeking relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the filing of a voluntary petition pursuant thereto; and (iv) any other strategic alternatives available to the Company (collectively, the "Restructuring Alternatives");

WHEREAS, the Sole Stockholder has identified that, as the Company proceeds with evaluating the Restructuring Alternatives, certain directors of the Board of Directors (the "Board") may have, or may be deemed to have, an interest in the consummation of such Restructuring Alternatives that may conflict with, or be different from or in addition to, the interests of the Company and its stockholders, lenders and potential claims holders (a "Conflict", the existence of which shall, in each instance, be as determined by the Special Committee (as defined below) in its sole and absolute discretion);

WHEREAS, the Company has recommended, and the Sole Stockholder has determined that it is advisable and in the best interests of the Company to form a committee of the Board at the present time, and before any Conflict arises, consisting of directors not affiliated with the holders of substantial equity interests in, or funded debt claims against, the Company to evaluate the Restructuring Alternatives, determine whether one or more of the Restructuring Alternatives is in the best interest of the Company and its stakeholders and, if appropriate, negotiate, and recommend to the Board for its approval the terms of one or more of the Restructuring Alternatives;

WHEREAS, the Sole Stockholder has identified those directors who are independent and not affiliated with the substantial equity holders or the substantial claim holders of the Company for purposes of serving on such special committee;

**BE IT**

CCA-BK0003100

**RESOLVED,** that the Company hereby establishes, pursuant to Section 141(c) of the DGCL and the governing documents of the Company, a special committee of independent directors (the "Special Committee"), which shall have the powers and responsibilities set forth below and otherwise granted to it by the Board;

**RESOLVED,** that Section VI of the Board of Directors Governance Policy, dated as of April 25, 2016, is hereby amended to allow the Company to establish the Special Committee with no less than one member;

**RESOLVED,** that Elizabeth Abrams (the "Special Committee Member"), is the identified disinterested independent director who is hereby appointed as the member of the Special Committee, and Elizabeth Abrams is hereby appointed to serve as Chairman of the Special Committee;

**RESOLVED,** that, to the fullest extent permitted by law, the Sole Stockholder hereby delegates and transfers to the Special Committee the power and authority of the Board to: (1) review and evaluate the process and procedures related to the review and evaluation of the Restructuring Alternatives by management and the Board; (2) review and evaluate the terms and conditions and determine the advisability of the Restructuring Alternatives; (3) assess whether one or more of the Restructuring Alternatives is advisable and is fair to, and in the best interests of, the Company and its stakeholders and recommend to the Board (x) whether the Board should approve one or more of the Restructuring Alternatives (including, without limitation, documents setting forth the terms thereof), and (y) what other action, if any, should be taken by the Company with respect to the Restructuring Alternatives (it being understood that the Board shall have final approval rights over the Restructuring Alternatives); (4) review, analyze, evaluate and monitor all proceedings and activities of the Company related to the Restructuring Alternatives, including oversight of management in connection therewith; (5) review any and all documents and other instruments to be used in connection with the Restructuring Alternatives, including any and all materials to be filed in connection with any chapter 11 proceedings commenced by the Company, if any; (6) if deemed necessary, retain any necessary or advisable legal, financial or other advisors in connection with the execution of the Special Committee's powers and the satisfaction of the Special Committee's obligations, including in order to obtain any necessary or desirable analyses or opinions from the legal, financial and other advisors of its choosing, including, without limitation, fairness opinions; (7) provide reports and/or recommendations to the Board in regard to such matters at such time as the Special Committee deems appropriate and consistent with its activities; (8) establish the methods for calling and attending meetings (including telephonic meetings) of the Special Committee, (9) respond to any communications, inquiries or proposals regarding one or more of the Restructuring Alternatives, and (10) take any other actions as the Special Committee may deem to be necessary or appropriate with respect to the foregoing, all as may be determined by the Special Committee in its sole discretion — it being understood that (i) all decisions of the Special Committee shall be made with the unanimous consent of the members of the Special Committee, (ii) that any action that could be taken at a duly called meeting of the Special Committee can be taken by the unanimous written consent of the Special Committee and (iii) the Special Committee shall act for the benefit of the Company and its applicable stakeholders; provided, however, the Board shall retain the exclusive

CCA-BK0003101

power to approve and authorize the Restructuring Alternatives, subject to the following resolution;

**RESOLVED,** that the Board shall not approve the entering into of any Restructuring Alternative with any Conflict without the approval of any such transaction by the Special Committee, and the Special Committee shall have the power to reject any or all of the Restructuring Alternatives that arise in connection with any Conflict;

**RESOLVED,** that in the event one or more of the members of the Board are recused from any evaluation or approval of any Restructuring Alternative, the Special Committee Member shall constitute a quorum of the Board, with requisite power and authority to evaluate and approve any Restructuring Alternative;

**RESOLVED,** that the Special Committee be, and it hereby is, authorized to perform and cause to be performed any and all acts, on behalf of the Company, as the Special Committee may deem to be necessary or appropriate in connection with the exercise of its authority pursuant to these resolutions, and to negotiate, execute and deliver and cause to be negotiated, executed and delivered any agreements or other documents that the Special Committee may deem to be necessary or appropriate in connection therewith (including, without limitation, any engagement letter or confidentiality agreement) and to waive rights and conflicts under all such agreements and documents;

**RESOLVED,** that the Special Committee be, and it hereby is, authorized: (1) to obtain such information regarding the Company and any documents or other information as may be useful in the discharge of the Special Committee's duties as contemplated herein, and to obtain such assistance from the officers, employees and agents of the Company as the Special Committee may deem to be necessary or appropriate; (2) to direct the actions of the officers, other directors and employees of the Company, and the officers, directors and employees of each of its subsidiaries, in connection with the Restructuring Alternatives in such manner as the Special Committee shall determine to be reasonable and appropriate under the circumstances; and (3) to take such other actions to carry out its responsibilities as the Special Committee may deem to be necessary or appropriate;

**RESOLVED,** that the officers, employees and agents of the Company and each of the Company's subsidiaries, including the Authorized Persons (as defined below), are hereby directed to cooperate fully with the Special Committee and its advisors, agents, counsel and designees, in all respects related to the Restructuring Alternatives and to take direction from the Special Committee, and officers, employees and agents of the Company and its subsidiaries acting on behalf of the Special Committee, in connection with the Restructuring Alternatives, and are hereby directed to provide to the Special Committee and its advisors such information and materials as may be helpful in the discharge of the Special Committee's duties, and any other assistance as the Special Committee or its advisors, agents, counsel and designees may request;

**RESOLVED,** that the Company shall pay all expenses incurred by the Special Committee, including the fees and expenses of its financial, legal and other advisors, consultants and experts,

Confidential

and each Special Committee Member shall be reimbursed by the Company for all out-of-pocket expenses incurred by such Special Committee Member in connection with his service on the Special Committee;

**RESOLVED,** that, without limiting any rights of any Special Committee Member under applicable law, under the Company's governing documents or under any indemnification agreement or other agreement to which any such Special Committee Member is a party or under which any such Special Committee Member has any rights, the Company (and its successors and assigns) shall indemnify and hold harmless each Special Committee Member (to the fullest extent permitted by applicable law) in connection with any action or failure to act on the part of such Special Committee Member in furtherance of or relating to the Restructuring Alternatives or otherwise in connection with his/her role or service as a Special Committee Member;

**RESOLVED,** that the Special Committee Members be, and each of them hereby is, authorized, empowered and directed, for and on behalf of the Company, to take and cause to be taken such actions, and to make, sign, execute, acknowledge and deliver and cause to be made, signed, executed, acknowledged and delivered such agreements, certificates, orders, directions, requests, receipts and other instruments, as the Special Committee may deem to be necessary or appropriate to give effect to the foregoing resolutions and to perform the terms and provisions of each document delivered pursuant to any of the foregoing resolutions;

**RESOLVED,** that the Special Committee shall keep minutes of the meetings of the Special Committee, and shall file a copy of such minutes in the corporate minutes of the Company at an appropriate time;

**RESOLVED,** that the foregoing resolutions are not intended to reflect a decision at this time by the Board to enter into a Restructuring Alternative or to take any other particular course of action; and

**RESOLVED,** that all actions previously taken by any Authorized Person or any of them (including any Special Committee Member) in connection with the matters referred to in the foregoing resolutions be, and they hereby are, approved, adopted, ratified and confirmed in all respects as fully as if such actions had been presented to the Board for its approval prior to such actions being taken;

**NOW, THEREFORE BE IT RESOLVED,** that the Authorized Persons be, and each of them hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to prepare all documentation and to effect all filings as may be necessary or advisable under the various securities laws, regulations and rules of the United States or any applicable state, local or foreign jurisdiction by and in connection with the foregoing resolutions, to execute personally or by attorney-in-fact such documentation and filings or amendments or supplements to any of the foregoing, and to cause such documentation and filings and any amendments and supplements thereto to become effective or otherwise approved;

**RESOLVED,** that the Authorized Persons of the Company be, and each of them hereby is, authorized and empowered, in the name and on behalf of the Company to make all such

CCA-BK0003103

arrangements, to take all such further action, to cause to be prepared and filed all such documents, to make all expenditures and incur all expenses and to execute and deliver, in the name of and on behalf of the Company, as applicable, all agreements, instruments, documents and certificates, as they may deem necessary, appropriate or advisable in order to fully effectuate the purpose of each and all of the foregoing resolutions and the execution by such Authorized Persons of any such agreement, instrument, document or certificate or the payment of any such expenditures or expenses or the doing by them of any act in connection with the foregoing matters shall conclusively establish their authority therefor from the Board, the approval and ratification by the Board of the agreement, instrument, document or certificate so executed, the expenses or expenditures so paid and the action so taken;

**RESOLVED,** that any and all actions heretofore taken by any Authorized Person or Authorized Persons in connection with the matters contemplated by the foregoing resolutions be, and they hereby are, Approved as fully as if such actions had been presented to the Board for its approval prior to such actions being taken;

**RESOLVED,** that for purposes of the foregoing resolutions, the term "Authorized Persons" shall mean and include with respect to the Company, the Chief Executive Officer, the President, the Secretary, the Treasurer, the Chief Financial Officer, the General Counsel, any Executive Vice President, any Vice President, any Assistant Secretary and any Assistant Treasurer of the Companies, any Special Committee Member, or any of them; and

**RESOLVED,** that, the Secretary and any other appropriate officer of the Company, are, and each of them acting alone hereby is, authorized, empowered and directed to certify and furnish such copies of these resolutions and such statements as to the incumbency of the Company's officers, under corporate seal if necessary, as may be requested, and any person receiving such certified copy is and shall be authorized to rely upon the contents thereof.

IN WITNESS WHEREOF, the undersigned, being the sole stockholder of CCA CONSTRUCTION, INC., has duly executed this written consent to be effective as of October 21, 2024.

CSCEC HOLDING COMPANY, INC., a
Delaware corporation, Sole Stockholder

By: _____

Name: Yan Wei
Title: Authorized Representative

CCA-BK0003104

**EXHIBIT E**

EXECUTION VERSION

# SECRETARY'S CERTIFICATE

## OF

## CCA CONSTRUCTION, INC.

December 22, 2024

Reference is made to the Debtor-In-Possession Credit Agreement, to be dated as of December 23, 2024 (as amended, restated, replaced, supplemented, or otherwise modified from time to time, this "**Credit Agreement**"), by and among **CCA CONSTRUCTION, INC.**, a Delaware corporation and a debtor and debtor-in-possession ("**CCA**," the "**Borrower**" or "**Debtor**"), **CSCEC HOLDING COMPANY, INC.**, as agent for the Lenders (solely in such capacity, together with its successors and assigns in such capacity, the "**Agent**") and the other Persons from time to time party hereto, as lenders (collectively, the "**Lenders**" and each a "**Lender**").

The undersigned, Jun Li, as Corporate Secretary of the Borrower, certifies solely on behalf of the Borrower, in his capacity as Corporate Secretary and not individually, as follows:

(a)    Attached hereto as Annex 1 is a true, correct and complete copy of the articles of incorporation of the Borrower, as amended through the date hereof (the "Charter"), as certified by the Secretary of State of the State of Delaware. The Charter is in full force and effect on the date hereof, has not been amended or cancelled and no amendment to the Charter is pending or proposed.  To the best of the undersigned's knowledge, no steps have been taken and no proceedings are pending for the merger, division, consolidation, conversion, dissolution, termination or liquidation of the Borrower and no such proceedings are threatened or contemplated.

(b)    Attached hereto as Annex 2 is a true, correct and complete copy of the bylaws of the Borrower, as amended through the date hereof (the "Bylaws"), as in effect at all times since the adoption thereof to and including the date hereof. Such Bylaws have not been amended, repealed, modified, superseded, revoked or restated, and such Bylaws are in full force and effect on the date hereof and no amendment to the Bylaws is pending.

(c)    Attached hereto as Annex 3 is a true, correct and complete copy of the resolutions adopted by unanimous written consent of the Special Committee of the Borrower, dated as of the date hereof (the "Resolutions"). The Resolutions authorize, among other things, the execution, delivery and performance of each of the Credit Agreement and the transactions contemplated thereby.

(d)    Attached hereto as Annex 4 is a list of the persons who, as of the date hereof, are duly elected and qualified officers of the Borrower holding the offices indicated next to their respective names, and the signatures appearing opposite their respective names are the true and genuine signatures of such officers or true facsimiles thereof, and each of such officers is duly authorized to execute and deliver, on behalf of the Borrower, the Credit Agreement and any of the other documents contemplated thereby.

*[The remainder of this page is intentionally left blank.]*

Confidential                                                              CCA-BK0017276

IN WITNESS WHEREOF, the Borrower has caused this certificate to be executed on its behalf by its Corporate Secretary, as of the day first set forth above.

By: _____
Name:  Jun Li
Title:   Corporate Secretary

I, Yan Wei, am the duly elected and acting Chairman and CEO of the Borrower, and do hereby certify in such capacity on behalf of the Borrower and not in my individual capacity that Jun Li is the duly elected, qualified and acting Corporate Secretary of the Borrower and that the signature appearing above and on Annex 4 hereto is his genuine signature or a true facsimile thereof.

By: _____
Name:  Yan Wei
Title:   Chairman and CEO

[Signature Page to Secretary's Certificate]

Confidential

**Annex 1 – Charter**

Confidential

# Delaware

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "CCA CONSTRUCTION, INC." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF INCORPORATION, FILED THE TWENTY-SIXTH DAY OF MAY, A.D. 1993, AT 9 O`CLOCK A.M.

CERTIFICATE OF REVIVAL, FILED THE NINETEENTH DAY OF JANUARY, A.D. 1999, AT 9 O`CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "CHINA CONSTRUCTION AMERICA, INC." TO "CCA CONSTRUCTION, INC.", FILED THE TENTH DAY OF AUGUST, A.D. 2017, AT 11:51 O`CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID CORPORATION, "CCA CONSTRUCTION, INC.".

Jeffrey W Bullock  Secretary of State

2337884  8100H
SR# 20244572238

Authentication: 205201518
Date: 12-20-24

You may verify this certificate online at corp.delaware.gov/authver.shtml

Confidential

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09.00 AM 05/26/1993
713146006 - 2337884

## CERTIFICATE OF INCORPORATION

## OF

## CHINA CONSTRUCTION AMERICA, INC.

The undersigned, a natural person, for the purpose of organizing a corporation for conducting the business and promoting the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware (particularly Chapter 1, Title 8 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified and referred to as the "General Corporation Law of the State of Delaware"), hereby certifies that:

**FIRST:** The name of the corporation (hereinafter called the "Corporation") is China Construction America, Inc.

**SECOND:** The address, including street, number, city and county, of the registered office of the Corporation in the State of Delaware is 1013 Centre Road, City of Wilmington, County of New Castle, and the name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

**THIRD:** The nature of the business or purposes to be conducted or promoted is:

To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

**FOURTH:** The total number of shares of stock which the Corporation shall have authority to issue is 1,500

shares without par value all of which are of the same class and all of which are designated as common shares.

     **FIFTH:**    The name and the mailing address of the incorporator are as follows:

    **NAME**                   **MAILING ADDRESS**

    Anne Herb-Schreiber     Whitman & Ransom
                                     200 Park Avenue
                                     New York, NY 10166

     **SIXTH:**    The Corporation is to have perpetual existence.

     **SEVENTH:**  Whenever a compromise or arrangement is proposed between this Corporation and its creditors or any class of them and/or between this Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of this Corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for this Corporation under the provisions of Section 291 of Title 8 of the Delaware Code or on the application of trustees in dissolution or of any receiver or receivers appointed for this Corporation under the provisions of Section 279 of Title 8 of the Delaware Code order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of

2

Confidential                                                   CCA-BK0017281

the creditors or class of creditors, and/or of the
stockholders or class of stockholders of this Corporation,
as the case may be, agree to any compromise or arrangement
and to any reorganization of this Corporation as consequence
of such compromise or arrangement, the said compromise or
arrangement and the said reorganization shall, if sanctioned
by the court to which the said application has been made, be
binding on all the creditors or class of creditors, and/or
on all the stockholders or class of stockholders, of this
Corporation, as the case may be, and also on this
Corporation.

        **EIGHTH:**    In furtherance and not in limitation of
the powers conferred by statute, the board of directors is
expressly authorized to make, alter, or repeal the by-laws,
and to adopt any new by-law, of the Corporation.

        **NINTH:**    To the fullest extent permitted by the
General Corporation Law of Delaware, as the same may be
amended and supplemented, no director shall be personally
liable to the corporation or its stockholders for monetary
damages for breach of fiduciary duty as a director.

        **TENTH:**    The Corporation shall, to the fullest
extent permitted by Section 145 of the General Corporation
Law of Delaware, as the same may be amended and
supplemented, (i) indemnify any and all persons whom it
shall have power to indemnify under said section from and
against any and all of the expenses, liabilities or other

3

Confidential                                                                 CCA-BK0017282

matters referred to in or covered by said section, and (ii) advance expenses to any and all said persons. The indemnification and advancement of expenses provided for herein shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in their official capacities and as to action in another capacity while holding such offices, and shall continue as to persons who have ceased to be directors, officers, employees or agents and shall inure to the benefit of the heirs, executors and administrators of such persons.

ELEVENTH: From time to time any of the provisions of this certificate of incorporation may be amended, altered or repealed, and other provisions authorized by the laws of the State of Delaware at the time in force may be added or inserted in the manner and at the time prescribed by said law, and all rights at any time conferred upon the stockholders of the Corporation by this certificate of incorporation are granted subject to the provisions of this Article ELEVENTH.

Signed on May 26, 1993.

Anne Herb-Schreiber, Incorporator
Whitman & Ransom
200 Park Avenue
New York, NY  10166

4

Confidential                                                                CCA-BK0017283

STATE OF NEW YORK          )
                           :       ss.:
COUNTY OF NEW YORK         )

     BE IT REMEMBERED that, on May 26, 1993, before me, a Notary Public duly authorized by law to take acknowledgement of deeds, personally came Anne Herb-Schreiber, the incorporator who duly executed the foregoing certificate of incorporation before me and acknowledged the same to be her act and deed, and that the facts therein stated are true.

     GIVEN under my hand on May 26, 1993.

Notary Public

JOHN C. KATSANOS
Notary Public, State of New York
No. 41-5002653
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Aug. 17, 19__

5

Confidential                                                  CCA-BK0017284

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 01/19/1999
991021842 - 2337884

# STATE OF DELAWARE
## CERTIFICATE FOR RENEWAL
## AND REVIVAL OF CHARTER

China Construction America, Inc. _____, a
corporation organized under the laws of Delaware, the charter of which was voided for non-payment of taxes, now desires to procure a restoration, renewal and revival of its charter, and hereby certifies as follows:

1. The name of this corporation is China Construction America, Inc.

2. Its registered office in the State of Delaware is located at _____
1013 Centre Road      Street, City of Wilmington _____
Zip Code 19805 _____ County of New Castle _____ the name and
address of its registered agent is Corporation Service Company,
1013 Centre Road, Wilmington, Delaware, 19805

3. The date of filing of the original Certificate of Incorporation in Delaware
was May 26, 1993

4. The date when restoration, renewal, and revival of the charter of this
company is to commence is the 28th day of February 1998 _____,
same being prior to the date of the expiration of the charter. This renewal
and revival of the charter of this corporation is to be perpetual.

5. This corporation was duly organized and carried on the business authorized
by its charter until the 1st day of March A.D. 19 98 ____,
at which time its charter became inoperative and void for non-payment of
taxes and this certificate for renewal and revival is filed by authority of the
duly elected directors of the corporation in accordance with the laws of the
State of Delaware.

IN TESTIMONY WHEREOF, and in compliance with the provisions of Section
312 of the General Corporation Law of the State of Delaware, as amended, providing for
the renewal, extension and restoration of charters, Victor Q. Y. Meng _____
the last and acting authorized officer hereunto set his/her hand to this certificate this
Jan. 15 _____ day of January, 19 99 ____.

By: _____
Authorized Officer

Name: Victor Q.Y. Meng
Print or Type

Title: Chairman _____

Confidential

CCA-BK0017285

State of Delaware
Secretary of State
Division of Corporations
Delivered 11:51 AM 08/10/2017
FILED 11:51 AM 08/10/2017
SR 20175665326 - File Number 2337884

# STATE OF DELAWARE
## CERTIFICATE OF AMENDMENT
## OF CERTIFICATE OF INCORPORATION

The corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware does hereby certify:

**FIRST**: That at a meeting of the Board of Directors of China Construction America, Inc.

resolutions were duly adopted setting forth a proposed amendment of the Certificate of Incorporation of said corporation, declaring said amendment to be advisable and calling a meeting of the stockholders of said corporation for consideration thereof. The resolution setting forth the proposed amendment is as follows:

**RESOLVED**, that the Certificate of Incorporation of this corporation be amended by changing the Article thereof numbered "_____FIRST_____" so that, as amended, said Article shall be and read as follows:

> The name of the corporation (hereinafter called the "Corporation") is CCA Construction, Inc.

**SECOND**: That thereafter, pursuant to resolution of its Board of Directors, a special meeting of the stockholders of said corporation was duly called and held upon notice in accordance with Section 222 of the General Corporation Law of the State of Delaware at which meeting the necessary number of shares as required by statute were voted in favor of the amendment.

**THIRD**: That said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

**IN WITNESS WHEREOF**, said corporation has caused this certificate to be signed this 31st  day of July , 20 17 .

By: _____
        Authorized Officer
Title: Vice President and Secretary

Name: Lilin Cao
        Print or Type

CCA-BK0017286

**Annex 2 – Bylaws**

Confidential

BY-LAWS

OF

CHINA CONSTRUCTION AMERICA, INC.

ARTICLE I.
MEETINGS OF STOCKHOLDERS

SECTION 1. Annual Meeting. A meeting of stockholders shall be held annually for the election of directors and the transaction of such other business as is related to the purpose or purposes set forth in the notice of meeting on such date and at such time as may be fixed by the Board of Directors; or if no date and time are so fixed, at 10:00 A.M. on the first Wednesday in May in each and every year, unless such day shall fall on a legal holiday, in which case such meeting shall be held on the next succeeding business day, at such time as may be fixed by the Board of Directors.

SECTION 2. Special Meetings. Special meetings of the stockholders for any purpose may be called by the Board of Directors, the Chairman of the Board, the President or the Secretary, and shall be called by the Chairman of the Board, the President or the Secretary at the written request of the holders of record of a majority of the outstanding shares of the Corporation entitled to vote at such meeting. Special meetings shall be held at such time as may be fixed in the call and stated in the notices of meeting or waiver thereof. At any special meeting only such business may be transacted as is related to the purpose or purposes for which the meeting is convened.

SECTION 3. Place of Meetings. Meetings of stockholders shall be held at such place, within or without the State of Delaware or the United States of America, as may be fixed in the call and stated in the notice of meeting or waiver thereof.

SECTION 4.  <u>Notice of Meetings; Adjourned Meetings</u>.  Notice of each meeting of stockholders shall be given in writing and shall state the place, date and hour of the meeting.  The purpose or purposes for which the meeting is called shall be stated in the notice of each special meeting and of each annual meeting at which any business other than the election of directors is to be transacted.

A copy of the notice of any meeting shall be given, personally or by mail, not less than ten (10) nor more than sixty (60) days before the date of the meeting, to each stockholder entitled to vote at such meeting.  If mailed, such notice is given when deposited in the United States mail, with postage thereon prepaid, directed to the stockholder at his address as it appears on the record of stockholders.

When a meeting is adjourned for less than thirty (30) days in any one adjournment, it shall not be necessary to give any notice of the adjourned meeting if the time and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken, and at the adjourned meeting any business may be transacted that might have been transacted on the original date of the meeting.  When a meeting is adjourned for thirty (30) days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.

SECTION 5.  <u>Waiver of Notice</u>.  The transactions of any meeting of stockholders, however called and with whatever notice, if any, are as valid as those at a meeting duly held after regular call and notice, if:  (a) all the stockholders entitled to vote are present in person or by proxy and no objection to holding the meeting is made by any stockholder; or if (b) a quorum is present either in person or by proxy and no objection to holding the meeting is made by anyone so present, and if, either before or after the meeting, each of the persons entitled to vote, not

1694-1

-2-

present in person or by proxy, signed a written waiver of notice, or a consent to the holding of the meeting, or an approval of the action taken as shown by the minutes thereof.

Whenever notice is required to be given to any stockholder, a written waiver thereof signed by such stockholder, whether before or after the time thereon stated, shall be deemed equivalent to such notice. Attendance of a person at a meeting of stockholders shall constitute a waiver of notice of such meeting, except when such stockholder attends for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any meeting of stockholders need be specified in any written waiver of notice thereof.

SECTION 6. Qualification of Voters. Except as may be otherwise provided in the Certificate of Incorporation, every stockholder of record shall be entitled to one vote on each matter submitted to a vote at a meeting of stockholders for every share standing in his name on the record of stockholders.

SECTION 7. Quorum. At any meeting of the stockholders the presence, in person or by proxy, of the holders of a majority of the shares entitled to vote thereat shall constitute a quorum for the transaction of any business. When a quorum is once present to organize a meeting, it is not broken by the subsequent withdrawal of any stockholders. The stockholders present may adjourn the meeting despite the absence of a quorum.

SECTION 8. Proxies. Every stockholder entitled to vote at a meeting of stockholders or to express consent or dissent without a meeting may authorize another person or persons to act for him by proxy. Every proxy must be executed by the stockholder or his

1694-1

-3-

CCA-BK0017290

attorney-in-fact.  No proxy shall be valid after the expiration of three (3) years from the date

thereof unless otherwise provided in the proxy.  Every proxy shall be revocable at the pleasure of

the stockholder executing it, except as otherwise provided therein and as permitted by law.

Except as otherwise provided in the proxy, any proxy holder may appoint in writing a substitute

to act in his place.

SECTION 9.  Voting.  Except as otherwise required by law, directors shall be

elected by a plurality of the votes cast at a meeting of stockholders by the holders of shares

entitled to vote in the election.  Whenever any corporate action, other than the election of

directors, is to be taken by vote of the stockholders at a meeting, it shall, except as otherwise

required by law or the Certificate of Incorporation, be authorized by a majority of the votes cast

thereat, in person or by proxy.

SECTION 10.  Action Without a Meeting.  Whenever stockholders are required or

permitted to take any action at a meeting or by vote, such action may be taken without a meeting,

without prior notice and without a vote, by consent in writing setting forth the action so taken,

signed by the holders of outstanding shares having not less than the minimum number of votes

that would be necessary to authorize or take such action at a meeting at which all shares entitled

to vote thereon were present and voted.  Prompt notice of the taking of the corporate action

without a meeting by less than unanimous written consent shall be given to those stockholders

who have not consented in writing.

SECTION 11.  Record Date.  The Board of Directors is authorized to designate a

day, not more than sixty (60) days nor less than ten (10) days prior to the day of holding any

meeting of stockholders as the day as of which those stockholders entitled to notice of, and to

1694-1

-4-

CCA-BK0017291

vote at, such meeting shall be determined; and only stockholders of record on such day shall be entitled to notice or to vote at such meeting.

SECTION 12.  <u>List of Stockholders Entitled to Vote</u>.  The officer who has charge of the stock ledger of the Corporation shall prepare and make, at least ten days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten days prior to the meeting, either at a place within the city where the meeting is to be held (which place shall be specified in the notice of the meeting), or, if not so specified, at the place where the meeting is to be held.  The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

SECTION 13.  <u>Inspectors of Election</u>.  The Chairman of any meeting of the stockholders may appoint one or more Inspectors of Election.  Any Inspector so appointed to act at any meeting of the stockholders, before entering upon the discharge of his or her duties, shall be sworn faithfully to execute the duties of an Inspector at such meeting with strict impartiality, and according to the best of his or her ability.

ARTICLE II.

BOARD OF DIRECTORS

SECTION 1.  <u>Power of Board and Qualification of Directors</u>.  The business and affairs of the Corporation shall be managed by the Board of Directors.

1694-1

-5-

CCA-BK0017292

SECTION 2. <u>Number of Directors</u>. The number of directors constituting the whole Board of Directors shall be such number not less than one (1) nor more than fifteen (15) as may be fixed from time to time by resolution adopted by the stockholders or by the Board.

SECTION 3. <u>Election and Term of Directors</u>. At each annual meeting of stockholders, directors shall be elected to serve until the next annual meeting and until their respective successors are elected and qualified.

SECTION 4. <u>Resignations</u>. Any director of the Corporation may resign at any time by giving written notice to the Board of Directors, the Chairman of the Board, the President or the Secretary of the Corporation. Such resignation shall take effect at the time specified therein; and unless otherwise specified therein the acceptance of such resignation shall not be necessary to make it effective.

SECTION 5. <u>Removal of Directors</u>. Any or all of the directors may be removed with or without cause by vote of the stockholders.

SECTION 6. <u>Newly Created Directorships and Vacancies</u>. Newly created directorships resulting from an increase in the number of directors or vacancies occurring in the Board of Directors for any reason, except the removal of directors by stockholders without cause, may be filled by vote of a majority of the directors then in office, even if less than a quorum exists, or may be filled by the stockholders. Vacancies occurring as a result of the removal of directors by stockholders without cause shall be filled by the stockholders. A director elected to fill a vacancy or a newly created directorship shall be elected to hold office until the next annual meeting of stockholders.

SECTION 7. <u>Executive and Other Committees of Directors</u>. The Board of

Confidential                                                                       CCA-BK0017293

Directors, by resolution adopted by a majority of the whole Board, may designate from among its members an executive committee and other committees to serve at the pleasure of the Board of Directors, each consisting of one or more directors, and each of which, to the extent provided in the resolution, shall have all the authority of the Board to the full extent authorized by law, including the power or authority to declare a dividend or to authorize the issuance of stock.  The Board of Directors may designate one or more directors as alternate members of any such committee, who may replace any absent member or members at any meeting of such committee.

SECTION 8.  Compensation of Directors.  The Board of Directors shall have authority to fix the compensation of directors for services in any capacity, or to allow a fixed sum plus expenses, if any, for attendance at meetings of the Board or of committees designated thereby.

SECTION 9.  Interest of Director in a Transaction.  No contract or transaction between the Corporation and one or more of its directors or officers, or between the Corporation and any other corporation, partnership, association or other organization in which one or more of its directors or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the Board or committee thereof which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if:

(a)  The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Directors or the committee, and the Board or committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the

1694-1

-7-

Confidential

CCA-BK0017294

disinterested directors be less than a quorum; or

(b)  The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the stockholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the stockholders; or

(c)  The contract or transaction is fair as to the Corporation as of the time it is authorized, approved or ratified, by the Board of Directors, a committee thereof, or the stockholders.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or of a committee which authorized the contract or transaction.

ARTICLE III.

MEETINGS OF THE BOARD

SECTION 1.  <u>Regular Meetings</u>.  Regular meetings of the Board of Directors may be held without notice at such times and places, within or without the State of Delaware, or the United States of America, as may from time to time be fixed by the Board.

SECTION 2.  <u>Special Meetings; Notice; Waiver</u>.  Special meetings of the Board of Directors may be held at any time and place, within or without the State of Delaware or the United States of America, upon the call of the Chairman of the Board, the President or the Secretary, by oral, telegraphic or written notice, duly given to or sent or mailed to each director not less than two (2) days before such meeting.  Special meetings shall be called by the Chairman of the Board, the President or the Secretary on the written request of any two directors.

1694-1

-8-

CCA-BK0017295

Notice of a special meeting need not be given to any director who submits a signed waiver of notice whether before or after the meeting, or who attends the meeting without protesting, prior thereto or at its commencement, the lack of notice to him.

A notice, or waiver of notice, need not specify the purpose of any special meeting of the Board of Directors.

SECTION 3.  <u>Quorum; Action by the Board; Adjournment</u>.  At all meetings of the Board of Directors, a majority of the whole Board shall constitute a quorum for the transaction of business, except that when the number of directors constituting the whole Board shall be an even number, one-half of that number shall constitute a quorum.

The vote of a majority of the directors present at the time of the vote, if a quorum is present at such time, shall be the act of the Board, except as may be otherwise specifically provided by law or by the Certificate of Incorporation or by these By-Laws.

A majority of the directors present, whether or not a quorum is present, may adjourn any meeting to another time and place.

SECTION 4.  <u>Action Without a Meeting</u>.  Action taken by a majority of the directors or members of a committee without a meeting is nevertheless Board or committee action if written consent to the action in question is signed by all the directors or members of the committee, as the case may be, and filed with the minutes of the proceedings of the Board or committee, whether done before or after the action so taken.

SECTION 5.  <u>Action Taken by Conference Telephone</u>.  Members of the Board of Directors or any committee of the Corporation may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons

Confidential                                                                          CCA-BK0017296

participating in the meeting can hear each other.

## ARTICLE IV.

## OFFICERS

SECTION 1. <u>Officers</u>.  The Board of Directors shall elect a Chairman of the Board, President, one or more Vice Presidents, a Secretary and a Treasurer of the Corporation and from time to time may elect or appoint such other officers as it may determine.  Any two or more offices may be held by the same person.

Securities of other corporations held by the Corporation may be voted by any officer designated by the Board and, in the absence of any such designation, by the Chairman of the Board, the President, any Vice President, the Secretary, or the Treasurer.

The Board may require any officer to give security for the faithful performance of his duties.

SECTION 2. <u>Chairman of the Board</u>.  The Chairman of the Board shall preside as chairman of all meetings of directors and stockholders.

SECTION 3. <u>Vice Chairman of the Board</u>.  The Vice Chairman of the Board shall be the chief executive officer of the Corporation with all the rights and powers incident to that position.

SECTION 4. <u>President</u>.  The President shall be the chief operating officer of the Corporation with all the rights and powers incident to that position.

SECTION 5. <u>Vice President</u>.  The Vice Presidents shall perform such duties as may be prescribed or assigned to them by the Board of Directors, the Chairman of the Board or the President.  In the absence of the President, the first-elected Executive Vice President shall

Confidential

CCA-BK0017297

perform the duties of the President.  In the event of the refusal or incapacity of the President to function as such, the first-elected Executive Vice President and the other Vice Presidents, in order of their rank, shall so perform the duties of the President; and the order of rank of such other Vice Presidents shall be determined by the designated rank of their offices or, in the absence of such designation, by seniority in the office of Vice President; provided that said order or rank may be established otherwise by action of the Board of Directors from time to time.

SECTION 6.  <u>Treasurer</u>.  The Treasurer shall perform all the duties customary to that office, and shall have the care and custody of the funds and securities of the Corporation.  He shall at all reasonable times exhibit his books and accounts to any director upon application, and shall give such bond or bonds for the faithful performance of his duties with such surety or sureties as the Board of Directors from time to time may determine.

SECTION 7.  <u>Secretary</u>.  The Secretary shall act as Secretary of and shall keep the minutes of the meetings of the Board of Directors and of the Stockholders, have the custody of the seal of the Corporation and perform all of the other duties usual to that office.

SECTION 8.  <u>Assistant Treasurer and Assistant Secretary</u>.  Any Assistant Treasurer or Assistant Secretary shall perform such duties as may be prescribed or assigned to him by the Board of Directors, the Chairman of the Board or the President.  An Assistant Treasurer shall give such bond or bonds for the faithful performance of his duties with such surety or sureties as the Board of Directors from time to time may determine.

SECTION 9.  <u>Term of Office; Removal</u>.  Each officer shall hold office for such term as may be prescribed by the Board and may be removed at any time by the Board with or without cause.  The removal of an officer without cause shall be without prejudice to his contract

1694-1

-11-

Confidential

CCA-BK0017298

rights, if any.  The election or appointment of an officer shall not of itself create contract rights.

SECTION 10.  <u>Compensation</u>.  The compensation of all officers of the Corporation shall be fixed by the Board of Directors.

ARTICLE V.

SHARE CERTIFICATES

SECTION 1.  <u>Form of Share Certificates</u>.  The shares of the Corporation shall be represented by certificates, in such form as the Board of Directors may from time to time prescribe, signed by the Chairman of the Board, a Vice Chairman of the Board, the President, an Executive Vice President, or a Vice President, and by the Secretary, an Assistant Secretary, the Treasurer or an Assistant Treasurer, and shall be sealed with the seal of the Corporation or a facsimile thereof.  The signatures of the officers upon a certificate may be facsimiles if the certificate is countersigned by a transfer agent or regis- tered by a registrar other than the Corporation or its employees.  In case any such officer who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer at the date of issue.

SECTION 2.  <u>Lost Certificates</u>.  In case of the loss, theft, mutilation or destruction of a stock certificate, a duplicate certificate will be issued by the Corporation upon notification thereof and receipt of such proper indemnity as shall be prescribed by the Board of Directors.

SECTION 3.  <u>Transfer of Shares</u>.  Transfers of shares of stock shall be made upon the books of the Corporation by the registered holder in person or by duly authorized attorney, upon surrender of the certificate or certificates for such shares properly endorsed.

1694-1

-12-

Confidential

CCA-BK0017299

SECTION 4. <u>Registered Stockholders</u>. Except as otherwise provided by law, the Corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends or other distributions and to vote as such owner, and to hold such person liable for calls and assessments, and shall not be bound to recognize any equitable or legal claim to or interest in such share or shares on the part of any other person.

## ARTICLE VI.

## MISCELLANEOUS PROVISIONS

SECTION 1. <u>Corporate Seal</u>. The corporate seal shall have inscribed thereon the name of the Corporation and such other appropriate legend as the Board of Directors may from time to time determine.

SECTION 2. <u>Fiscal Year</u>. The fiscal year of the Corporation shall be the twelve months ending December 31 or such other period as may be prescribed by the Board of Directors.

SECTION 3. <u>Checks and Notes</u>. All checks and demands for money and notes or other instruments evidencing indebtedness or obligations of the Corporation shall be signed by such officer or officers or other person or persons as shall be thereunto authorized from time to time by the Board of Directors.

## ARTICLE VII.

## AMENDMENTS

SECTION 1. <u>Power to Amend</u>. By-Laws of the Corporation may be adopted, amended or repealed by the Board of Directors, subject to amendment or repeal by the stockholders entitled to vote thereon.

1694-1

Confidential

CCA-BK0017300

**<u>Annex 3 – Resolutions</u>**

Confidential

**WRITTEN CONSENT**

**OF THE SPECIAL COMMITTEE**

**OF**

**CCA CONSTRUCTION, INC.**

Dated: December 22, 2024

Pursuant to the authority granted to it under the resolutions of the sole stockholder of CCA CONSTRUCTION, INC., a Delaware corporation (the "Company"), dated November 2, 2024, authorizing the formation of a special committee of the Company's Board of Directors (the "Special Committee"), the undersigned, being the sole member of the Special Committee, does hereby declare that said actions shall be effective as of the date hereof:

> **WHEREAS**, in accordance with Section VI of the Board of Directors Governance Policy, dated as of April 25, 2016, the sole stockholder of the Company delegated and transferred to the Special Committee the requisite power and authority to review, analyze, recommend, approve, and execute restructuring alternatives should other members of the Board of Directors (the "Board") of the Company recuse themselves;

> **WHEREAS**, the other members of the Board have recused themselves from any evaluation or approval of the currently available restructuring and financing alternatives and the Special Committee therefore constitutes a quorum of the Board, with requisite power and authority to evaluate and approve any restructuring alternative;

> **WHEREAS**, the Special Committee has reviewed the materials presented by the management and the advisors of the Company regarding the liabilities and liquidity situation of the Company, the restructuring alternatives available to it and the impact of the foregoing on the Company's businesses, and available alternatives for financing of the Company;

> **WHEREAS**, the Special Committee has had the opportunity to consult with the management and the advisors of the Company and fully consider each of the restructuring and financing alternatives available to the Company;

> **WHEREAS**, the Special Committee has determined that it is desirable and in the best interests of the Company and its creditors that a petition be filed by the Company seeking relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

1

Confidential

BE IT

Chapter 11 Petition

       **RESOLVED**, that in the judgment of the Special Committee, it is desirable and in the best interests of the Company, its creditors and other parties in interest, that the Company file or cause to be filed a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code with the Bankruptcy Court; and

       **RESOLVED**, that each of the officers of the Company (the "Authorized Officers"), acting alone or with one or more other Authorized Officers be, and they hereby are, authorized and empowered to execute and file on behalf of the Company all petitions, schedules, lists and other motions, papers or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's business and any and all action that they deem necessary or proper in connection with the Company's chapter 11 case;

Debtor-in-Possession Financing

       **RESOLVED**, that in connection with the commencement of the chapter 11 case, the Authorized Officers be, and hereby are, authorized, empowered and directed, in the name and on behalf of the Company to negotiate, execute and deliver the Debtor-in-Possession Credit Agreement, dated on or about December 23, 2024 (as may be amended, restated, or supplemented, the "DIP Credit Agreement") by and among the Company and CSCEC Holding Company, Inc. in the aggregate amount of $40 million with the execution and the performance by the Company of its obligations thereunder and the transactions contemplated thereby to be desirable, advisable and in the best interests of the Company;

       **RESOLVED**, that the Authorized Officers may take such additional action and to execute and deliver each other agreement, instrument or document to be executed and delivered, in the name and on behalf of the Company, pursuant thereto or in connection with the DIP Credit Agreement, all with such changes therein and additions thereto as any Authorized Officer approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

Retention of Professionals

       **RESOLVED**, that the Authorized Officers be, and they hereby are, authorized and directed to employ the law firm of Debevoise & Plimpton LLP as general bankruptcy counsel to represent and assist the Company in connection with any case commenced by the Company under the

2

CCA-BK0017303

Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations;

**RESOLVED**, that the Authorized Officers be, and they hereby are, authorized and directed to employ the law firm of Cole Schotz P.C. as bankruptcy co-counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations;

**RESOLVED**, that the Authorized Officers be, and they hereby are, authorized and directed to employ the firm of BDO Consulting Group, LLC as financial advisor to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations;

**RESOLVED**, that the Authorized Officers be, and they hereby are, authorized and directed to employ the firm of Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") as administrative advisor to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations, and to retain Verita as claims and noticing agent in accordance with 28 U.S.C. § 156(c);

**RESOLVED**, that the Authorized Officers be, and they hereby are, authorized and directed to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations; and

**RESOLVED**, that the Authorized Officers be, and they hereby are, authorized and directed to execute appropriate retention agreements, pay appropriate retainers and cause to be filed appropriate applications for authority to retain the services of the foregoing professionals as necessary;

<u>Further Actions and Prior Actions</u>

**RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Officers, each of the officers of the Company or their designees shall be, and each of them, acting alone, hereby is, authorized, directed and empowered in the name of, and on behalf of, the Company, to take or cause to be taken any and all such further actions, to execute and deliver any and all such agreements, certificates, instruments and other documents and to pay all expenses, including filing fees, in each case as in such officer or officers' judgment shall be necessary or desirable to fully carry out the intent and accomplish the purposes of the Resolutions adopted herein;

**RESOLVED**, that all acts, actions and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and

3

CCA-BK0017304

Docusign Envelope ID: 274CG7CG-8082-430A-R622-4FDAB09E46CC

on behalf of the Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before these resolutions were certified, are hereby in all respects approved and ratified; and

**RESOLVED**, that this written action of the Special Committee may be executed in counterparts, each of which shall be deemed to be an original and all of which shall together constitute but one and the same instrument, and that a copy of this written action of the Special Committee shall be filed with the minutes of the proceedings of the board of directors of the Company.

Confidential

CCA-BK0017305

Docusign Envelope ID: 274CC7C6-8082-430A-B922-4FDAB09E46CC

IN WITNESS WHEREOF, the undersigned, being the sole member of the Special Committee of CCA CONSTRUCTION, INC, has duly executed this Written Consent to be effective as of the date written above.

By:    _____

Name:  Elizabeth Abrams
Title:    Special Committee Member

5

CCA-BK0017306

### Annex 4 – Incumbency Certificate

| **Name** | **Title** | **Signature** |
|---|---|---|
| Yan Wei | Chairman and CEO | |
| Jun Li | Corporate Secretary | |

[Incumbency Certificate]

CCA-BK0017307