**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Erica S. Weisgerber (admitted *pro hac vice*)
Elie J. Worenklein
Shefit Koboci (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
nlabovitz@debevoise.com
eweisgerber@debevoise.com
eworenklein@debevoise.com
skoboci@debevoise.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Felice R. Yudkin
Ryan T. Jareck
Court Plaza North, 25 Main Street
Hackensack, NJ 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel to the Debtor and Debtor in Possession*

*Co-Counsel to the Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| CCA Construction, Inc.,[1] | Case No. 24-22548 (CMG) |
| Debtor. | |

### NOTICE OF DEBTOR'S MOTION FOR AN ORDER EXTENDING THE EXCLUSIVE PERIODS FOR FILING A CHAPTER 11 PLAN AND SOLICITING ACCEPTANCE THEREOF

**PLEASE TAKE NOTICE** that on **May 22, 2025 at 11:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, the above-captioned debtor and debtor in possession ("**CCA**" or the "**Debtor**") shall move the *Debtor's Motion for an Order Extending the*

---

[1] The last four digits of the Debtor's federal tax identification number are 4862. The Debtor's service address for the purposes of this chapter 11 case is 445 South Street, Suite 310, Morristown, NJ 07960.

*Exclusive Periods for Filing a Chapter 11 Plan and Soliciting Acceptance Thereof* (the "**Motion**")

before the Honorable Christine M. Gravelle, United States Bankruptcy Judge, in Courtroom 3 of

the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Trenton,

NJ 08608, for entry of an order, substantially in the form submitted herewith, extending the

exclusive periods for filing a Chapter 11 plan and soliciting acceptances thereto.

      **PLEASE TAKE FURTHER NOTICE** that in support of the relief requested in the

Motion, CCA shall rely on the accompanying Motion, which sets forth the relevant legal and

factual bases upon which the relief requested should be granted.  A proposed Order granting the

relief requested in the Motion is also submitted herewith.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in

the Motion shall:  (a) be in writing; (b) state with particularity the basis of the objection; and

(c) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who

regularly practice before the Bankruptcy Court in accordance with the *General Order Regarding*

*Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002*

(the "**General Order**") and the *Commentary Supplementing Administrative Procedures* dated as

of March 2004 (the "**Supplemental Commentary**") (the General Order, the Supplemental

Commentary and the User's Manual for the Electronic Case Filing System can be found at

www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other

parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in

accordance with the General Order and the Supplemental Commentary, so as to be received no

later than seven (7) days before the hearing date set forth above.

      **PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in this chapter

11 case may be obtained free of charge by visiting the website of Kurtzman Carson Consultants,

LLC dba Verita Global at https://veritaglobal.net/cca.   You may also obtain copies of any

pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the

procedures and fees set forth therein.

      **PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served,

the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d) and the relief

requested may be granted without further notice or hearing.


*[Remainder of page intentionally left blank]*

DATED:  April 21, 2025         Respectfully submitted,

By:     */s/Michael D. Sirota*     
           **COLE SCHOTZ P.C.**
           Michael D. Sirota
           Warren A. Usatine
           Felice R. Yudkin
           Ryan T. Jareck
           25 Main Street
           Hackensack, NJ, 07601
           (201) 489-3000
           msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com
           rjareck@coleschotz.com

           -and-

           **DEBEVOISE & PLIMPTON LLP**
           M. Natasha Labovitz (admitted *pro hac vice*)
           Erica S. Weisgerber (admitted *pro hac vice*)
           Elie J. Worenklein
           Shefit Koboci (admitted *pro hac vice*)
           66 Hudson Boulevard
           New York, NY 10001
           Telephone:    (212) 909-6000
           Facsimile:    (212) 909-6836
           nlabovitz@debevoise.com
           eweisgerber@debevoise.com
           eworenklein@debevoise.com
           skoboci@debevoise.com

           *Co-Counsel to the Debtor*
           *and Debtor in Possession*

| | |
|---|---|
| **DEBEVOISE & PLIMPTON LLP** | **COLE SCHOTZ P.C.** |
| M. Natasha Labovitz (admitted *pro hac vice*) | Michael D. Sirota |
| Erica S. Weisgerber (admitted *pro hac vice*) | Warren A. Usatine |
| Elie J. Worenklein | Felice R. Yudkin |
| Shefit Koboci (admitted *pro hac vice*) | Ryan T. Jareck |
| 66 Hudson Boulevard | Court Plaza North, 25 Main Street |
| New York, NY 10001 | Hackensack, NJ 07601 |
| Telephone: (212) 909-6000 | Telephone: (201) 489-3000 |
| Facsimile: (212) 909-6836 | Facsimile: (201) 489-1536 |
| nlabovitz@debevoise.com | msirota@coleschotz.com |
| eweisgerber@debevoise.com | wusatine@coleschotz.com |
| eworenklein@debevoise.com | fyudkin@coleschotz.com |
| skoboci@debevoise.com | rjareck@coleschotz.com |

*Co-Counsel to the Debtor and Debtor in Possession*   *Co-Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CCA Construction, Inc.,[1] | Case No. 24-22548 (CMG) |
| Debtor. | |

**DEBTOR'S MOTION FOR AN ORDER EXTENDING THE EXCLUSIVE PERIODS
FOR FILING A CHAPTER 11 PLAN AND SOLICITING ACCEPTANCE THEREOF**

TO THE HONORABLE JUDGE CHRISTINE M. GRAVELLE, UNITED STATES

BANKRUPTCY JUDGE FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtor and debtor in possession ("**CCA**" or the "**Debtor**")

respectfully states as follows in support of this motion:

---

[1]    The last four digits of CCA's federal tax identification number are 4862.  CCA's service address for the purposes of this chapter 11 case is 445 South Street, Suite 310, Morristown, NJ 07960.

**Relief Requested**

1.      CCA seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), extending CCA's exclusive right to file a chapter 11 plan for a period of 120 days through and including August 19, 2025 (the **Exclusive Filing Period**"), and to solicit votes thereon through and including October 20, 2025[2] (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**"), without prejudice to CCA's right to seek further extensions of the Exclusive Periods.[3]

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  CCA consents to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]      The date 120 days after June 20, 2025, is Saturday October 18, 2025, but such date continues to October 20, 2025, by operation of Rule 9006(1)(C) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

[3]      Pursuant to section 1121(b) of the Bankruptcy Code, the Exclusive Filing Period and the Exclusive Solicitation Period were originally set to expire on April 21, 2025 and June 20, 2025, respectively.  Pursuant to Gen. Order Governing Chapter 11 Complex Case Procedures § XIII, U.S. Bankr. Ct., D.N.J. (Aug. 1, 2024) (the "**Chapter 11 Complex Case Procedures**"), the filing of this motion prior to the expiration of the current Exclusive Filing Period acts to automatically extend the Exclusive Periods until the Court acts on the Motion without the necessity for entry of a bridge order.

4.     The bases for the relief requested herein are section 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Bankruptcy Rule 9006; and the Chapter 11 Complex Case Procedures.

**Background**

**A.   Procedural Background**

5.     On December 22, 2024 (the "**Petition Date**"), CCA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  CCA is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No statutory committees have been appointed or designated.  On March 5, 2025, the Court entered an order directing the United States Trustee to appoint an examiner pursuant to section 1104(c) of the Bankruptcy Code, and an examiner will be appointed pursuant to that order on April 29, 2025. [Docket Nos. 211 and 247].

6.     Additional information regarding CCA, the events leading up to the Petition Date, and the facts and circumstances supporting the relief requested in this motion is set forth in the *Declaration of Yan Wei, Chairman & Chief Executive Officer of the Debtor, in Support of Chapter 11 Petition* (the "**Wei Declaration**") and the *Declaration of Evan Blum in Support of First Day Pleadings and Debtor-in-Possession Financing* (the "**BDO Declaration**" and, together with the Wei Declaration, the "**First Day Declarations**") which are incorporated herein by reference.

**B.   The Challenges Facing CCA and Key Developments in the First 120 Days**

7.     CCA has made significant progress in its restructuring efforts since the Petition Date.  In just under four months, CCA has stabilized its business and that of its subsidiaries, including responding to inquiries from customers, surety bond providers and other stakeholders, filed schedules of assets and liabilities and statements of financial affairs, obtained approval of its

3

debtor-in-possession financing over the objection of BML Properties Ltd. ("**BMLP**"), provided extensive formal and informal discovery to BMLP and maintained good faith engagement with BMLP regarding chapter 11 matters, sought authority to pursue and pursued its appeal of the adverse decision against it in *BML Props. Ltd. v China Construction America, Inc.*, *et al.*, No. 657550/2017 (Sup. Ct., NY County), in the New York Supreme Court, Commercial Division (the "**Baha Mar Litigation**"), and, through the special committee of its board of directors (the "**Special Committee**"), commenced an investigation into potential estate causes of action.  In parallel, CCA has been actively developing a chapter 11 plan of reorganization.  Despite this tremendous progress, significant work remains to be done prior to emergence from chapter 11, including resolving the important contingency of whether BMLP's claim will be allowed and in what amount.  This work, which is being done transparently and expeditiously for the benefit of all stakeholders, requires an extension of CCA's exclusive period to file and solicit votes on a chapter 11 plan of reorganization.

### I.    The Contested DIP Process

8.    During the current Exclusive Filing Period, CCA obtained Court approval of a $40 million debtor-in-possession financing (the "**DIP Facility**"), a milestone that was critical to stabilizing its business, including operational support services to its subsidiaries and certain affiliates (the "**Shared Services Program**"), the operating businesses of CCA's subsidiaries, and preserving value for the benefit of all stakeholders.  The path to approval of the DIP Facility involved extensive efforts by CCA and its advisors.  BMLP filed a wide-ranging objection to approval of the DIP Facility, which resulted in substantial contested discovery.  In response to BMLP's demands, CCA produced more than 18,000 pages of documents, responded to 37 formal document requests and presented multiple witnesses for deposition and/or trial testimony,

4

including CCA's Chief Executive Officer, a representative from its financial advisor (BDO Consulting Group, LLP), and its independent director.

9.     On February 13, 2025, after a full-day evidentiary hearing on CCA's motion to approve the DIP Facility, the Court overruled BMLP's objection and approved the DIP Facility in full.

10.    The funding provided through the DIP Facility has ensured that CCA can continue its business operations, fund necessary professional fees (including the costs incurred responding to BMLP's discovery requests), and maintain the value of its assets as it works to formulate a value-maximizing chapter 11 plan of reorganization.

## II.     The Baha Mar Appeal

11.    During the current Exclusive Filing Period, CCA obtained authorization from this Court to pursue an appeal of the Baha Mar Litigation, a significant proceeding involving substantial claims against CCA.  By order dated December 26, 2024 [Docket 46], this Court granted limited relief from the automatic stay to allow CCA to prosecute the appeal of the Baha Mar Litigation to the New York State Supreme Court, Appellate Division, First Department (the "**First Department**").

12.    The First Department appeal was fully briefed on an expedited schedule, and the First Department held oral argument on March 18, 2025.  On April 8, 2025, the First Department issued a decision affirming the judgment of the New York State Supreme Court, Commercial Division in the Baha Mar Litigation.  Notice of the appellate decision was provided to this Court on April 10, 2025 [Docket No. 247].

13.    CCA strongly believes the First Department decision was rendered in error.  Given the importance of the final outcome of the Baha Mar Litigation to both the value of CCA's estate

and resolution of this chapter 11 case, CCA is seeking Court authority to petition the Court of

Appeals of the State of New York for leave to take a further appeal.

### III.    Contested Examiner Motion

14.    On January 23, 2025, BMLP filed a motion seeking the appointment of an examiner

under section 1104(c) of the Bankruptcy Code [Docket No. 88].    CCA opposed the motion,

demonstrating that it was both premature and unnecessary in light of the formation of the Special

Committee, which has authority to evaluate restructuring alternatives and investigate any potential

estate claims.    CCA further showed that the scope of the examiner's work, as proposed by BMLP,

would have duplicated the efforts of the Special Committee and resulted in unnecessary expense

to the estate.

15.    While the Court ultimately determined that the appointment of an examiner was

required under applicable law in this circuit, it recognized that CCA had acted in good faith in

negotiating the DIP Facility, that the appointment of the Special Committee was fair and

reasonable, and that the scope, duration, and cost of the examiner's investigation must be

appropriately limited.    *See* Feb. 13, 2025, Hr'g. Tr. 212: 12-25; 213: 1-13.    Ultimately, CCA

worked consensually with BLMP to reach agreement to defer the appointment of an examiner until

after the outcome of the First Department appeal.    At this time, the examiner is to be appointed on

April 29, 2025, and the scope of the examination will be determined by the Court at a later date.

CCA believes and will advocate that the scope of the examination should be narrowly focused,

consistent with recent precedent in this and other circuits.

### IV.    Resolving Rule 2004 Discovery Requests

16.    BMLP served numerous subpoenas pursuant to Bankruptcy Rule 2004 [Docket

Nos. 100 and 111] on, among other parties, CCA's affiliates, numerous banking institutions and

surety bond providers.    CCA has engaged constructively with BMLP and other constituents to

narrow the scope of these requests in order to reduce costs to the estate, avoid burdening critical third-party business partners and to promote a more efficient and cooperative exchange of information. To that end, CCA has worked with BMLP to resolve questions raised by the discovery requests and has volunteered to produce responsive materials in its possession to eliminate the need for some third-party discovery. *See e.g., Notice of Withdrawal of Subpoenas for Rule 2004 Examinations Without Prejudice* [Docket No. 205]. These efforts reflect CCA's commitment to transparency, good faith, and minimizing disruption to critical business relationships, all for the benefit of the estate and its stakeholders.

## V.    Special Committee Investigation

17.    As disclosed in the First Day Declarations, following the appointment of Ms. Abrams as independent director, the Board and CCA's sole shareholder took action to create the Special Committee, of which the sole member is Ms. Abrams. The scope of the Special Committee's delegated authority includes, among other things, to review and evaluate the terms and conditions and determine the advisability of certain transactions as to which other directors may have a conflict of interest. In addition, the Special Committee is tasked with investigating any potential causes of action that CCA may hold in circumstances where other directors may have, or are deemed to have, a conflict of interest as determined by the Special Committee in its sole discretion.

18.    The Special Committee's investigation is active and ongoing. This work is a critical component of CCA's efforts to evaluate and maximize estate value, and it is expected to inform the formulation of CCA's plan of reorganization: among other things, the investigation is a necessary component of determining the amount of distributable value, the time and expense that might be required in order to liquidate that value, the validity of certain claims that could be

asserted by CCA, and the scope (if any) of releases that would be appropriate in the context of a chapter 11 plan .

## VI.    Filing of Schedules and Statements; Other Administrative Progress

19.     While performing the tasks related to securing the DIP Facility and prosecuting its appeal of the Baha Mar Litigation, CCA filed its *Schedules of Assets and Liabilities and Statements of Financial Affairs* [Docket No. 99] and on March 26, 2025, CCA filed its *Amended Schedules of Assets and Liabilities and Statements of Financial Affairs* [Docket No. 234], which necessarily required an expenditure of substantial time and effort on the part of CCA and certain of their personnel and professionals.  In addition, CCA also prepared and filed its *Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest* [Docket No. 116]. These filings were completed in a timely manner and reflect CCA's ongoing commitment to transparency and compliance with its obligations under the Bankruptcy Code.

20.     In addition to the substantial efforts described above, since the Petition Date, CCA has attended to numerous administrative issues attendant to the commencement of this chapter 11 case, including: (i) obtaining necessary "first-day" and other relief to avoid operational disruption; (ii) responding to creditor inquiries and demands; (iii) retaining professionals; (iv) working closely with its vendors and customers to minimize the impact of this chapter 11 case on its day-to-day operations; and (v) preparing initial and monthly operating reports.

21.     In the weeks ahead, CCA intends to continue making significant progress advancing this chapter 11 case.  Among other things, CCA intends to file a chapter 11 plan that will incorporate a flexible, parallel-path structure designed to address alternative outcomes of the appeal of the Baha Mar Litigation, thereby permitting this chapter 11 case to move forward toward

8

a conclusion at the same time that the state court appeal is pending.[4]  Importantly, CCA remains

committed to engaging in good faith discussions with its DIP lender and BMLP to collaboratively

determine an appropriate and constructive path forward that maximizes value to the estate.  In

parallel, the Special Committee is continuing its investigation into potential estate causes of

actions, and CCA will continue to cooperate fully with that investigation and the work of the

examiner once he or she is appointed.  All of these important tasks will take time, and will proceed

during the extension of CCA's Exclusive Periods.

### Relief Requested

22.    CCA's current Exclusive Filing Period will expire on April 21, 2025 and CCA's

current Exclusive Solicitation Period will expire on June 20, 2025.  In order to preserve CCA's

ability to continue its efforts to formulate, propose and seek to confirm a chapter 11 plan with

minimal distractions, CCA respectfully requests, pursuant to section 1121(d) of the Bankruptcy

Code, that (i) the Exclusive Filing Period be extended by 120 days, through and including August

19, 2025 and (ii) the Exclusive Solicitation Period be extended by 120 days, through and including

October 20, 2025, in each case without prejudice to CCA's  right to seek further extensions of the

Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code or to seek other appropriate

relief.  This is CCA's first request for an extension of the Exclusive Periods.

---

[4]    The timing of filing the proposed plan will depend on discussions among CCA and its key stakeholders.  It is
CCA's hope to file the plan in the near term, potentially even before the hearing on this Motion, but additional
time may be warranted if there are constructive discussions ongoing among the parties. CCA will provide a
further update to the Court about these discussions at or before the hearing on this Motion.

**Basis for Relief**

**A. Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods "For Cause"**

23.    Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a plan of reorganization.  Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan within the exclusive filing period, it has an initial period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such plan.  Section 1121(d) of the Bankruptcy Code permits a bankruptcy court to extend a debtor's exclusive period to file a chapter 11 plan and solicit acceptances thereof upon a demonstration of "cause."  For the reasons set forth herein, CCA believes that "cause" exists to extend the Exclusive Periods.

24.    The Exclusive Periods under section 1121 of the Bankruptcy Code are intended to provide a debtor the opportunity to propose a chapter 11 plan and to solicit acceptances of the plan without the confusion, expense, and disruption to the debtor's business operations and relationships with key stakeholders that might be caused by the filing of competing plans by non-debtor parties.  Although this case has progressed on an expedited time frame and CCA is working diligently to prepare its chapter 11 plan as discussed above, an additional period of exclusivity is warranted to guard against unforeseen contingencies that may prevent CCA from proposing and confirming a plan and emerging from chapter 11 within the current Exclusive Periods.  In circumstances where, as here, there is a risk that the current Exclusive Periods could prove to be an unrealistic time frame to file and solicit acceptances of a chapter 11 plan, section 1121(d) of the Bankruptcy Code allows the Court to extend the Exclusive Periods for "cause."  Specifically, section 1121(d) of the Bankruptcy Code provides:

> [O]n request of a party in interest made within the respective periods
> specified in subsections (b) and (c) of this section and after notice
> and a hearing, the court may for cause reduce or increase the 120-
> day period or the 180-day period referred to in this section.

11. U.S.C. § 1121(d)(1).[5]

25.     It is well established that the decision to extend the Exclusive Periods is left to the

sound discretion of the Court and should be based upon the facts and circumstances of a particular

case.  *See In re Borders Grp., Inc.*, 460 B.R. 821-822 (Bankr. S.D.N.Y. 2011) (noting the court

has broad discretion in extending exclusivity); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R.

176, 184 (Bankr. D.N.J. 2002) (noting that the grant or denial of a request to extend exclusivity is

within the discretion of the bankruptcy court); *see also First Am. Bank of New York v. Sw. Gloves*

*& Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Court with

flexibility to either reduce or increase that period of exclusivity in its discretion.").

26.     Although the Bankruptcy Code does not define "cause" for the purpose of an

extension of the Exclusive Periods, courts have looked to the legislative history of section 1121(d)

of the Bankruptcy Code for guidance.  *See In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444,

451 (Bankr. D.N.J. 1993) (noting that the legislature intended that the granting of an extension be

based "on a showing of some promise of probable success [for reorganization].").  Indeed, courts

have found that Congress did not intend that the 120- and 180-day periods be a hard and fast rule.

*See In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (noting that Congress

intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In*

*re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [section 1121(d)] is

---

[5]    Additionally, even if cause is shown, the 120-day period "may not be extended beyond a date that is 18 months
after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the
[petition] date."  11 U.S.C. § 1121(d)(2).  This provision is inapplicable as this chapter 11 case is less than four
months old.

flexibility"). Rather, Congress intended that the Exclusive Periods be of an adequate length, given

the circumstances, for a debtor to formulate, negotiate and draft a viable plan of reorganization,

which by definition means one supported by some or all of a debtor's key constituents, without

the disruption to its business that would occur with the filing of competing plans. *See Geriatrics

Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D. N.J. 1995) ("The opportunity to

negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to

satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a

business.") (citing *Commerce Bank v. Mountain View Village*, 5 F.3d 34, 39 (3d Cir. 1993)).

Indeed, Congress recognized that often a 120-day exclusivity period will not afford a debtor

sufficient time to formulate and negotiate a plan:

> The court is given the power, though, to increase . . . the 120-day
> period depending on the circumstances of the case. [T]he bill allows
> the flexibility for individual cases that is not available today. For
> example, if an unusually large company were to seek reorganization
> under chapter 11, the Court would probably need to extend the time
> in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted).

27.    In particular, bankruptcy courts, including in the District of New Jersey, typically

examine several factors to determine whether a debtor has had an adequate opportunity to develop,

negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of a

debtor's exclusivity. *See Mo v. H.S.B.C. Bank USA, N.A.*, 650 B.R. 193, 227–28 (Bankr. D.N.J.

2023) (quoting *In re Cent. Jersey Airport Servs.*, 282 B.R. at 184). These factors include the

following: (i) the size and complexity of the case; (ii) the existence of good faith progress toward

reorganization; (iii) the necessity of sufficient time to negotiate a plan of reorganization and

prepare adequate information to allow a creditor to determine whether to accept such plan;

(iv) whether the debtor is paying its debts as they come due; (v) whether the debtor has

12

demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress in negotiating with creditors; (vii) the length of time the case has been pending; (viii) whether the debtor is seeking the extension to pressure creditors; and (ix) whether unresolved contingencies exist. *Id.*

28.    Not all of the above factors are necessary or relevant in determining whether to grant an extension of the exclusivity periods in a particular case. *See, e.g.*, *In re Weiss Multi-Strategy Advisers LLC*, 2024 WL 3841305 at *9 (Bankr. S.D.N.Y. Aug. 14, 2024) ("Not all of these factors are relevant in every case, and a finding that any number of these factors exists may justify extending a debtor's exclusive periods."); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (relying upon only four factors in determining whether cause exists to support an extension); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that cause existed to extend exclusivity based on only three factors). As explained more fully below, the application of the above factors to the facts and circumstances of this chapter 11 case demonstrates that more than sufficient cause exists to extend CCA's Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

**B.  Cause Exists for an Extension of the Exclusive Periods in This Chapter 11 Case**

### i.    CCA's Chapter 11 Case Is Large and Complex

29.    It is well settled that the size and complexity of a debtor's case alone may provide sufficient cause for the extension of a debtor's exclusive period to file a plan and to solicit acceptances thereof. *See* H.R. No. 95-595, at 231-232,406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement"); *see also In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge

debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.") (internal citations omitted).

30.       Similar to the complexity noted by courts in other situations, this case presents unique and significant challenges that merit the extension requested herein.  Among the most significant of these is the asserted claim by BMLP related to the Baha Mar Litigation, which is subject of ongoing appeal involving numerous complex legal and factual issues.  The existence and potential allowance of BMLP's claim represents a significant contingency that directly impacts estate valuation and plan formulation.  In addition, CCA's non-debtor subsidiaries rely on the Shared Services Program to function and operate their businesses, meaning that even a modest disruption in CCA's operations or liquidity could have ripple effects, across active, revenue-generating projects.  This interdependence adds structural complexity to the chapter 11 process that is not immediately apparent when assessing CCA's operational scale.

31.       Further compounding this complexity, as described further above, BMLP has served broad and burdensome discovery requests, including over 75 Bankruptcy Rule 2004 subpoenas directed at CCA's affiliates, financial institutions and surety partners. While CCA has engaged in good faith to narrow the scope of these requests and avoid unnecessary third-party disruption, certain discovery requests remain unresolved and continue to impose time and cost burdens on CCA's estate. In addition, as noted above, the Special Committee has commenced an investigation into potential estate causes of action. Further, the Court has ordered the appointment of an examiner under section 1104(c) of the Bankruptcy Code, and while that appointment is forthcoming, the scope and duration of the examiner's work remains to be determined.

32.     These unresolved litigation and investigatory issues introduce meaningful uncertainty and delay that must be addressed before a chapter 11 plan can be confirmed.  In light of these factors, the complexity of this case warrants an extension of the Exclusive Periods.

### ii.   CCA Has Made Good Faith Progress Towards Reorganization

33.     CCA has made material progress in its chapter 11 case.  As with most chapter 11 cases, the initial 120-day period was dominated by CCA's transition into chapter 11, including CCA's efforts to minimize disruptions to its business operations including its Shared Services Program, and in working to respond to the information demands of key stakeholders.   In approximately four months' time, CCA, among other accomplishments, has: (i) obtained necessary "first-day" and other relief to avoid operational disruption; (ii) prepared and filed their Schedules of Assets and Liabilities and Statements of Financial Affairs; (iii) leveraged access to the DIP Facility to improve its liquidity position, minimize business disruption and maintain the confidence of customers and vendors; (iv) secured relief from the automatic stay and prosecuted a critical appeal in the Baha Mar Litigation, with further appellate efforts ongoing; (v) resolved contested discovery issues directed at CCA's affiliates, financial institutions and surety providers, thus minimizing disruption and reinforcing cooperation; (vi) supported the work of the Special Committee, which is actively investigating potential estate claims, a process that will inform the ultimate plan of reorganization; and (vii) attended to numerous administrative matters, including operational stabilization, vendor engagement, customer support, and monthly reporting.

34.     In addition, as described above, CCA intends to continue development of a chapter 11 plan, including a flexible structure that will be able to adapt to the potential outcomes in the appeal of the Baha Mar Litigation, while engaging in good faith discussions with its stakeholders including BMLP and its DIP lender, all while proceeding with a Special Committee investigation

15

into estate claims and a related examiner process, all of which will further inform development
and prosecution of a chapter 11 plan.

35.      For the foregoing reasons, CCA believes that it will be able to confirm a viable plan
of reorganization in its chapter 11 case, and CCA has made significant progress toward that goal
in the first few months of this chapter 11 case, all of which fully supports an extension of the
Exclusive Periods.

### iii.      An Extension of the Exclusivity Periods Will Not Prejudice Creditors.

36.      Importantly, CCA is not seeking the extension of the Exclusivity Periods to
pressure or prejudice any of its stakeholders, but rather to continue the orderly, efficient and cost-
effective restructuring process for the ultimate benefit of its stakeholder group as a whole.
Continued exclusivity will allow CCA to bring this chapter 11 case to an orderly conclusion by
moving forward with valuation of its assets (including causes of action), liquidating claims against
it (including the BMLP claim, among others), and developing a flexible path forward such that a
plan can be pursued even if certain contingencies remain.  Being required to defend against one or
more competing plans while pursuing all of these critical workstreams would give rise to
uncertainty and unnecessary expense that would reduce, not preserve estate value for the benefit
of all stakeholders.

### iv.      CCA is Paying Its Debts as They Come Due

37.      CCA continues to pay timely its undisputed postpetition obligations.  As such, the
requested extension of the Exclusive Periods will afford CCA a meaningful opportunity to
continue to negotiate, formulate and confirm a chapter 11 plan without prejudice to parties in
interest in this chapter 11 case.

16

### v.    CCA Has Worked Constructively With Its Creditors

38.    Throughout the chapter 11 process, CCA has prioritized transparency and good faith cooperation in its restructuring efforts and has maintained open lines of communication with its key creditor constituencies, including BMLP.  While the Baha Mar Litigation remains a significant and unresolved issue that will materially impact the value of CCA's estate, CCA and BMLP have established a constructive dialogue on a number of matters arising in this case.  Notably, as described above, the parties collaborated to streamline the Bankruptcy Rule 2004 discovery, including resolving the subpoenas directed to the surety providers and CCA's affiliates.  CCA fully intends to maintain good faith engagement with BMLP as the parties continue to address outstanding issues and work toward the development of a chapter 11 plan that maximizes value for the benefit of all stakeholders.  CCA's efforts demonstrate its commitment to good faith engagement and support the requested extension of the Exclusive Periods as CCA moves toward the proposal of a chapter 11 plan.

### vi.    CCA's Chapter 11 Case Has Been Pending for Less Than Four Months

39.    CCA commenced this chapter 11 case on December 22, 2024, approximately 120 days ago.  This is the first request CCA has made for an extension of the Exclusive Periods.  In light of the short duration and complexity of this case, the challenges faced by CCA, and the progress that CCA has made to date, an extension of the Exclusive Periods is warranted.

### vii.    Additional Factors Exist to Support an Extension of the Exclusive Periods

40.    Termination of CCA's Exclusive Periods would adversely impact the overall progress of this case toward an eventual resolution.  If this Court were to deny CCA's request for an extension of the Exclusive Periods, any party in interest – including BMLP, who despite recent productive conversations has engaged in extensive, highly contentious litigation with CCA in the

17

past – would then be free to propose a plan.  Such a ruling would foster a chaotic environment

with no central focus, and may cause substantial harm to CCA's efforts to effect its reorganization.

Accordingly, CCA should be granted sufficient time to complete their own plan process and their

Exclusive Periods should be extended.

41.     Furthermore, CCA submits that relief similar to that requested herein has been

regularly granted to other debtors in this jurisdiction.  *See, e.g.*, *In re Careismatic Brands, LLC*, No.

24-10561 (VFP) (Bankr. D.N.J. May 8, 2024) (granting an initial exclusivity extension of 120 days);

*In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Apr. 29, 2024) (same); *In re Cyxtera Techs.,*

*Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. Sep. 21, 2023) (same); *In re Bed Bath & Beyond Inc.*,

No. 23-13359 (VFP) (Bankr. D.N.J. Aug. 2, 2023) (granting an initial exclusivity extension

of 90 days);  *In re National Realty Investment Advisors, LLC*,  No. 22-14539 (JKS)  (Bankr.

D.N.J. Oct. 10, 2022) (granting an initial exclusivity extension of 120 days).

42.     Based upon the foregoing, CCA respectfully submit that cause exists in these

bankruptcy proceedings to extend the Exclusive Periods for an additional 120 days, as requested,

pursuant to section 1121(d) of the Bankruptcy Code.

**Notice**

43.     CCA will provide notice of this motion to: (i) the U.S. Trustee; (ii) the entities

listed on the *List of Creditors Holding the 20 Largest Unsecured Claims*; (iii) Gibbons P.C., as

counsel to BMLP, (iv) Lowenstein Sandler LLP, as counsel to the DIP lender (v) the Internal

Revenue Service; (vi) the Office of the United States Attorney for the District of New Jersey; and

(vii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature

of the relief requested, CCA respectfully submits that no further notice is necessary.

**<u>No Prior Request</u>**

44.    No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, CCA respectfully requests that the Court (a) enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and (b) grant such other and further relief as is just and proper.

Dated:    April 21, 2025

/s/ Michael D. Sirota
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Ryan T. Jareck
Felice R. Yudkin
Court Plaza North, 25 Main Street
Hackensack, NJ 07601
Telephone:  (201) 489-3000
Facsimile:   (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

-and-

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Erica S. Weisgerber (admitted *pro hac vice*)
Elie J. Worenklein
Shefit Koboci (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone:  (212) 909-6000
Facsimile:   (212) 909-6836
nlabovitz@debevoise.com
eweisgerber@debevoise.com
eworenklein@debevoise.com
skoboci@debevoise.com

*Co-Counsel for the Debtor and Debtor in Possession*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Erica S. Weisgerber (admitted *pro hac vice*)
Elie J. Worenklein
Shefit Koboci (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone:  (212) 909-6000
Facsimile:  (212) 909-6836
nlabovitz@debevoise.com
eweisgerber@debevoise.com
eworenklein@debevoise.com
skoboci@debevoise.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Felice R. Yudkin
Ryan T. Jareck
Court Plaza North, 25 Main Street
Hackensack, NJ 07601
Telephone:  (201) 489-3000
Facsimile:   (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel to the Debtor and Debtor in
Possession*

| | |
|---|---|
| In re: | Case No. 24-22548 (CMG) |
| CCA Construction, Inc.,[1] | Chapter 11 |
| Debtor. | Judge: Christine M. Gravelle |

---

[1]  The last four digits of CCA's federal tax identification number are 4862.  CCA's service address for the purposes of this chapter 11 case is 445 South Street, Suite 310, Morristown, NJ 07960.

(Page | 2)

| | |
|---|---|
| Debtor: | CCA Construction, Inc. |
| Case No.: | 24-22548 (CMG) |
| Caption of Order: | Order Granting Debtor Relief from the Automatic Stay to Prosecute an Appeal |

## ORDER EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS
## FOR FILING A CHAPTER 11 PLAN AND SOLICITING ACCEPTANCE THEREOF

The relief set forth on the following pages, numbered three (3) through four (4), is

**ORDERED**.

(Page | 3)

| Debtor: | CCA Construction, Inc. |
|---|---|
| Case No.: | 24-22548 (CMG) |
| Caption of Order: | Order Granting Debtor Relief from the Automatic Stay to Prosecute an Appeal |

Upon CCA's motion [Docket No. ___] (the "**Motion**")[2] pursuant to section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that CCA's notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, and that such relief is in the best interests of CCA, its estate, its creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      CCA's Exclusive Filing Period is hereby extended through and including August 19, 2025.

3.      CCA's Exclusive Solicitation Period is hereby extended through and including October 20, 2025.

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

(Page | 4)

| Debtor: | CCA Construction, Inc. |
|---|---|
| Case No.: | 24-22548 (CMG) |
| Caption of Order: | Order Granting Debtor Relief from the Automatic Stay to Prosecute an Appeal |

4.      The entry of this Order shall be without prejudice to the rights of CCA to request further extensions of the Exclusive Periods or to seek other appropriate relief.

5.      Under the circumstances of the chapter 11 case, notice of the Motion is adequate, and the notice requirements of Bankruptcy Rule 9014 and 4001 and the Local Rules are satisfied by such notice.

6.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby satisfied by the contents of the Motion or otherwise waived.

7.      CCA is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order.

8.      This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the interpretation, implementation, or enforcement of this Order.