**GIBBONS P.C.**
Robert K. Malone, Esq.
Brett S. Theisen, Esq.
Christopher P. Anton, Esq.
Kyle P. McEvilly, Esq.
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
       btheisen@gibbonslaw.com
       canton@gibbonslaw.com
       kmcevilly@gibbonslaw.com

*Counsel to BML Properties, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>CCA Construction, Inc.,[1]<br><br>                  Debtor. | (Hon. Christine M. Gravelle)<br><br>Chapter 11<br><br>Case No. 24-22548-CMG |

**LIMITED OBJECTION OF BML PROPERTIES, LTD. TO DEBTOR'S**
**MOTION FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS**
**FOR FILING A CHAPTER 11 PLAN AND SOLICITING ACCEPTANCE THEREOF**

BML Properties, Ltd. ("BMLP"), by and through its undersigned counsel, submits this limited objection (the "Objection") to the *Debtor's Motion for Entry of an Order Extending the Exclusive Periods for Filing a Chapter 11 Plan and Soliciting Acceptance Thereof*, Dkt. 265 (the "Exclusivity Motion"),[2] filed by CCA Construction, Inc. (the "Debtor" or "CCA"), and respectfully represents as follows:

---

[1] The last four digits of CCA's federal tax identification number are 4862. CCA's service address for the purposes of this chapter 11 case is 445 South Street, Suite 310, Morristown, NJ 07960.

[2] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Exclusivity Motion.

1

**PRELIMINARY STATEMENT**

1. With certain conditions, BMLP does not oppose an extension of CCA's Exclusive Periods to file and solicit a Chapter 11 plan. First, CCA must begin to include BMLP in its efforts to develop a Chapter 11 plan and, except with BMLP's involvement and express consent, CCA should pause all such efforts until the Examiner finishes his investigation and publishes his findings. And second, CCA should not be permitted, without the express consent of BMLP, to file a proposed Chapter 11 plan until the Examiner's appointment concludes. These conditions will ensure that CCA does not expend significant estate resources developing an unconfirmable Chapter 11 plan and provide accountability and transparency in CCA's reorganization process.

2. In its Exclusivity Motion, CCA claims to be developing a Chapter 11 plan that will incorporate a "parallel-path structure" to address BMLP's now $1.7 billion judgment.[3] BMLP is, by orders of magnitude, CCA's largest creditor and thus holds veto power over the confirmation of any such Chapter 11 plan. Yet, as of the filing of this Objection, *CCA has yet to consult BMLP on any aspect of a Chapter 11 plan.*[4] CCA nonetheless spills considerable ink in the Exclusivity Motion, claiming that it has "prioritized transparency and good faith cooperation in its restructuring efforts and has maintained open lines of communication with its key creditor constituencies, including BMLP."[5] And CCA even goes so far as to claim that it "fully intends to maintain good faith engagement with BMLP as the parties continue to address outstanding issues and work toward the development of a chapter 11 plan that maximizes value for the benefit of all stakeholders."[6]

---

[3] Exclusivity Motion ¶ 21.
[4] Twenty-three (23) days after CCA filed the Exclusivity Motion, and the day before BMLP's objection deadline, CCA reached out to schedule a call about the plan.
[5] Exclusivity Motion ¶ 38.
[6] *Id*.

2

3. CCA's narrative is complete fiction. Rather than being cooperative, CCA has shut out BMLP from its reorganization process. If the truth were otherwise, CCA could have provided evidence of that engagement to the Court in support of the Motion. It has not. To date, BMLP still has not heard anything about CCA's proposed plans, and, as detailed in BMLP's briefing regarding the appropriate scope and budget for the examiner filed contemporaneously herewith, CCA concealed from BMLP that it had started an investigation of estate causes of action, even though BMLP is uniquely positioned and incentivized to support such an investigation. Despite CCA's hollow claims of cooperation, its conduct shows that it seeks to avoid transparency and to nullify the Examiner. Under these circumstances, the Court's intervention is necessary to ensure that CCA does not continue down a wasteful path. Accordingly, while BMLP does not object to an extension of the Exclusive Periods, the Court must impose conditions to ensure that CCA does not waste valuable estate resources pursuing a Chapter 11 plan constructed without BMLP's input and without the Examiner providing much needed transparency and accountability in this case.

## BACKGROUND

**A.    CCA's Commences this Chapter 11 Case as a Litigation Tactic in Response to BMLP's Final and Enforceable $1.6 Billion Judgment**

4. On October 18, 2024, the Supreme Court of the State of New York, New York County (the "New York Trial Court") issued a comprehensive 74-page decision finding CCA liable, along with two affiliated co-defendants, CSCEC Bahamas, Ltd. ("CSCECB") and CCA Bahamas Ltd. ("CCAB"), in connection with a scheme to defraud and loot assets from BMLP.[7] On October 31, 2024, the New York Court entered a judgment in favor of BMLP and against CCA,

---

[7] Dkt. 54-1 ("New York Decision").

3

CCAB, and CSCEB, jointly and severally, in a sum equal to $1,642,598,493.15, plus continuously accruing interest.[8] The total owed today, with interest, is now over $1.7 billion.

5. The New York Judgment provides that "BMLP shall have judgment and *immediate execution* on the judgment therefor."[9] Thus, contrary to CCA's assertion it needs time to "liquidat[e] claims against it (including the BMLP claim, among others)," BMLP's final judgment is a liquidated claim against CCA and fully enforceable against the named defendants.[10]

6. On December 22, 2024 (the "Petition Date"), in response to the Supreme Court of the State New York, Appellate Division, First Department ("New York Appellate Division"), denial of CCA's motion for a stay pending appeal of the New York Judgment, CCA filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") as a litigation tactic to stay the enforcement of the final New York Judgment. As evidenced by the timing and stated reasons of the bankruptcy filing; the lack of interest by general unsecured creditors that has left the United States Trustee unable to form an official committee of unsecured creditors; and the fact that no non-insider creditors other than BMLP have appeared at hearings in this case, this case is predominantly a two-party dispute between CCA and BMLP.

7. Immediately upon obtaining the protections of Chapter 11, CCA filed a motion seeking relief from the automatic stay, to permit CCA to prosecute its appeal as of right of the New York Judgment to the New York Appellate Division.[11] CCA, who is represented in this Chapter 11 case by the same counsel it used in its prepetition litigation with BMLP, represented in its first

---

[8] Dkt. 54-2 ("New York Judgment").
[9] New York Judgment at 4.
[10] Exclusivity Motion ¶ 36.
[11] *See* Dkt. 14 (the "First Stay Relief Motion").

4

day filings that the "trial court committed reversible error as to every element of liability, including damages" and that CCA had "a significant probability of success on the merits of the Appeal."[12]

8. On April 8, 2025, the New York Appellate Division unanimously affirmed the New York Judgment just a few weeks after a panel of four judges actively participated in an oral argument that discussed CCA's claims of error extensively.[13] The Appellate Division found that there was "no basis to disturb the trial court's award" because, among other reasons: (i) the evidence adduced at trial "is sufficient to support a finding of fraud"; (ii) "the trial court properly awarded plaintiff the value of its investment" as damages; and (iii) "the trial court properly found that under New York law," which the trial court correctly applied, "defendants' corporate veils should be pierced."[14]

9. Thereafter, on April 23, 2025, CCA filed a second motion for relief from the automatic stay, seeking authority to pursue a further appeal of the unanimous Appellate Division Decision and still asserting that it had meaningful chance of success, even though the Second Stay Relief Motion failed to address the New York Court of Appeals' standards for granting discretionary motions for leave to appeal.[15] The Court nonetheless granted the Second Stay Relief Motion, over the objection of BMLP, which set forth factual and legal grounds to conclude that CCA has less than a slight chance in obtaining leave to appeal the Appellate Division Decision to the New York Court of Appeals, or of prevailing on the merits of that appeal if such discretionary leave were granted. [16]

---

[12] First Stay Relief Motion ¶ 30.
[13] Dkt. 247-1 (the "Appellate Division Decision").
[14] Appellate Division Decision at 2, 4.
[15] *See* Dkt. 266 (the "Second Stay Relief Motion").
[16] *See* Dkt. 293; Dkt. 285.

5

**B.   The Examiner's Appointment**

10.  On January 23, 2025, BMLP filed the *Motion of BML Properties, Ltd. for Entry of an Order Appointing an Examiner*.[17] Among other reasons to appoint an Examiner, BMLP explained that CCA has a long practice, as proven at trial, of engaging in fraudulent conduct, and the lack of an official committee of unsecured creditors in this Chapter 11 case favors the appointment of an examiner to conduct an independent investigation.

11.  On March 5, 2025, following a contested hearing, the Court entered an order granting the Examiner Motion, which directed the United States Trustee (the "U.S. Trustee") to appoint an examiner upon the earlier of (i) twenty-one (21) days after the Appellate Division affirmed or upheld the New York Judgment against CCA, and (ii) June 1, 2025.[18]

12.  On April 29, 2025, after the Appellant Division affirmed the New York Judgment, the U.S. Trustee filed the Notice of Appointment of Examiner, thereby appointing Todd Harrison, Esq., subject to Court approval, to serve as the examiner in this chapter 11 case (the "Examiner").[19] In connection with the Examiner Notice, the U.S. Trustee filed an application requesting that the Court enter an order appointing the examiner, which the Court granted on May 7, 2025.[20]

13.  BMLP is filing *BML Properties, Ltd.'s Supplemental Brief in Support of the Appointment of Examiner* (the "Examiner Brief") contemporaneously herewith to address the appropriate scope, duration, and budget of the examiner, which the Court will hear on May 22, 2025, along with the Exclusivity Motion. As set forth in greater detail below, with certain guardrails implemented, the Examiner's investigation must run in parallel with an extension of the Exclusive Periods. BMLP incorporates the Examiner Brief herein by reference.

---

[17] *See* Dkt. 88 (the "Examiner Motion").
[18] *See* Dkt. 211 ¶ 2.
[19] *See* Dkt. 280 (the "Examiner Notice").
[20] *See* Dkt. 282; Dkt. 296.

6

**C.    The Exclusivity Motion and its Misrepresentations**

14.    The Exclusivity Motion paints a misleading picture of this Chapter 11 case and CCA's purported cooperation with BMLP.  In short, the "transparency", "good faith discussions", "good faith cooperation", and "good faith engagement" that CCA attempts to project in the Exclusivity Motion are non-existent.[21]  Despite BMLP being the largest stakeholder, CCA has vigorously opposed BMLP on practically every issue raised in this Chapter 11 case.  At the same time, CCA has not engaged with or sought any input from BMLP in connection with a Chapter 11 plan or any other path forward in this Chapter 11 case.  Therefore, CCA's stated "inten[tion] to maintain good faith engagement with BMLP as the parties continue to address outstanding issues and work toward the development of a chapter 11 plan" is perplexing.[22]

15.    Among other reasons, CCA asserts that the Exclusivity Periods should be extended because this Chapter 11 case is "large and complex."[23]  First, CCA states that "[a]mong the most significant of these" complexities is the "asserted claim by BMLP related to the Baha Mar Litigation."[24]  The New York Judgment is a final and enforceable judgment, which is perhaps one of the simplest claims asserted against a bankruptcy estate.  In fact, as evidenced by the lack of other creditor involvement in these proceedings, BMLP's claim effectively renders this Chapter 11 case a two-party dispute.  And, contrary to CCA's assertion that an extension of the Exclusive Periods is needed to continue "liquidating claims against it (including the BMLP claim, among others)," BMLP's final judgment is a liquidated, non-contingent claim.[25]  CCA's desire to pursue a long-shot motion for permission to appeal to the New York Court of Appeals does not add any complexity to this Chapter 11 case.

---

[21] Exclusivity Motion ¶ 16.
[22] *Id*. ¶ 16.
[23] *Id*. at 13.
[24] *Id*. ¶ 30.
[25] *Id*. ¶ 36; *See* Examiner Motion ¶¶ 51, 54.

7

16. Second, despite having characterized itself as a back office providing "shared services" to its affiliates, CCA now claims the "interdependence" between CCA and its affiliates "adds structural complexity to the chapter 11 process" and "that even a modest disruption in CCA's operations or liquidity could have ripple effects, across active, revenue-generating projects."[26] CCA offers no particulars in support of these hypothetical consequences; CSCEC Holding could simply take over CCA's functions directly. Indeed, CSCEC Holding officially provided shared services until 2021; it has, even after 2021, been the primary source of liquidity for CCA and has directly provided funds for payroll and for direct transfers to CCA's affiliates; and it now funds the shared services program through the DIP facility.[27] CCA also glosses over the fact that its affiliates are non-Debtors whose interests are not paramount to those of CCA's creditors. Notwithstanding CCA's embellishment of the complexities of the reorganizational elements of this case, nothing described by CCA warrants "cause" to extend the Exclusive Periods.

17. Third, following the contested debtor in possession financing and examiner appointment hearing, there has been little to no activity in this Chapter 11 case. Aside from routine bankruptcy matters, such as retaining estate professionals and filing schedules of assets and liabilities and a statement of financial affairs, BMLP is unaware of any advances by CCA of this Chapter 11 case. All that CCA's Exclusivity Motion relies upon is its involvement with BMLP's Bankruptcy Rule 2004 subpoenas, but the progress there has been minimal. CCA, CSCEC Holding, and all of their affiliates have opposed BMLP's Rule 2004 discovery, and apart from productions by banks (as to which CCA has had no role) and limited productions of documents related to CCA's surety bonds, discovery has been paused while awaiting an appointment of an Examiner. Lastly, with respect to the Special Committee's investigation, BMLP incorporates by

---

[26] Exclusivity Motion ¶ 30.
[27] *See generally* Examiner Brief.

8

reference its Examiner Brief, which explains how the Special Committee launched the investigation as a tactical ploy to evade scrutiny from the Examiner and to obtain releases for CCA's affiliates. Because the Special Committee's investigation was concealed from BMLP and tainted by conflicts from the outset, that investigation should be seen as a step in the wrong direction, not as progress.

## LIMITED OBJECTION

18. CCA can only confirm a Chapter 11 plan with the involvement and consent of BMLP, which holds an enforceable final judgment of now more than $1.7 billion against CCA and thus has a veto over confirmation of any Chapter 11 plan. Therefore, during the Exclusive Periods, CCA should (i) absent the involvement and express consent of BMLP, cease all efforts to develop a chapter 11 plan until the Examiner finishes his investigation and publishes his findings and (ii) absent the express consent of BMLP, be prohibited from filing with the Court a proposed chapter 11 plan until the Examiner's appointment concludes.

19. CCA claims that it is developing a Chapter 11 plan comprised of a flexible, parallel-path structure that will enable CCA to adapt to varying potential outcomes in the appeal of the New York Judgment. But, as BMLP's objection to the Second Stay Relief Motion makes clear, CCA's chance of success on its further appeal is near zero. In short order, CCA will have exhausted all paths for further review of the New York Judgment and must finally accept reality: it defrauded BMLP, is liable for now more than $1.7 billion, and, having voluntarily subjected itself to the bankruptcy process because of BMLP's judgment, CCA must address that liability in order to exit Chapter 11. The pursuit of a Chapter 11 plan that does not fully recognize BMLP's claim (including through direct consultation with BMLP on plan terms) is, simply put, a waste of estate resources.

20. Putting that aside, the Exclusivity Motion glosses over the importance of the Examiner's appointment to this Chapter 11 case. CCA's request to extend the Exclusive Periods must be considered in conjunction with the Examiner's mandate. In the Examiner Brief, BMLP establishes that the Examiner should have a broad investigative scope, with appropriate time and resources to conduct an investigation of that scope, because there have already been factual findings as to misconduct and non-credible testimony by CCA's witnesses in the New York Decision and because the Examiner's investigation will all but certainly reveal additional misconduct supporting estate causes of action, among other reasons. This investigation also may well undermine CCA's capacity to act as an estate fiduciary in this case. As such, CCA's exclusive right to file and solicit a Chapter 11 plan must be curtailed until the Examiner process concludes. That is particularly true here, where there is no official committee of unsecured creditors, who would ordinarily have been charged with the fiduciary duty to investigate CCA's prepetition conduct and related causes of action. The Examiner will undertake that responsibility here and advance this Chapter 11 case towards an end with all the facts on the table.

21. BMLP submits that, under the circumstances of this Chapter 11 case and CCA's imminent exhaustion of its last-ditch effort to seek discretionary leave to appeal, the Examiner's investigation is the appropriate means of advancing this proceeding towards resolution. Accordingly, while BMLP does not object to an extension of the Exclusive Periods, CCA's unilateral ability to develop and prosecute a Chapter 11 plan during the Exclusive Periods should be subject to the restrictions above.

## NOTICE

22. Copies of this Objection have been provided to: (a) Debevoise & Plimpton LLP and Cole Schotz P.C., co-counsel for the Debtor; (b) the U.S. Trustee, (c) McDermott Will & Emory

LLP, proposed counsel for the Examiner, (d) Lowenstein Sandler LLP, counsel for CSCEC Holding, and (e) all parties having formally requested notice in this case electronically via the Court's CM/ECF system.

## CONCLUSION

**WHEREFORE**, BMLP respectfully requests that the Court condition an extension of CCA's exclusive periods to file and solicit a Chapter 11 plan on (i) CCA immediately making good faith efforts to develop a Chapter 11 plan with BMLP and ceasing all efforts to develop a Chapter 11 plan, absent the involvement and express consent of BMLP, until the examiner finishes his investigation and publishes his findings, and (ii) prohibiting CCA from filing a Chapter 11 plan, absent the express consent of BMLP, with the Court until the examiner's appointment concludes. A proposed form of order extending the Exclusive Periods with BMLP's requested restrictions is attached hereto as **Exhibit A**.

Dated: May 15, 2025
Newark, New Jersey

**GIBBONS P.C.**

*/s/ Brett S. Theisen*
Robert K. Malone, Esq.
Brett S. Theisen, Esq.
Christopher P. Anton, Esq.
Kyle P. McEvilly, Esq.
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
        btheisen@gibbonslaw.com
        canton@gibbonslaw.com
        kmcevilly@gibbonslaw.com

*Counsel to BML Properties, Ltd.*