**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Erica S. Weisgerber (admitted *pro hac vice*)
Elie J. Worenklein
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Facsimile:  (212) 909-6836
nlabovitz@debevoise.com
eweisgerber@debevoise.com
eworenklein@debevoise.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Felice R. Yudkin
Ryan T. Jareck
Court Plaza North, 25 Main Street
Hackensack, NJ 07601
Telephone: (201) 489-3000
Facsimile:  (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel to the Debtor and Debtor in Possession*

*Co-Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CCA Construction, Inc.,[1] | Case No. 24-22548 (CMG) |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A)
APPROVING A SETTLEMENT AMONG CCA CONSTRUCTION,
INC., CSCEC HOLDING COMPANY, INC., BML PROPERTIES, LTD.,
AND CERTAIN RELATED PARTIES AND (B) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTINE M. GRAVELLE, CHIEF UNITED STATES
BANKRUPTCY JUDGE FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtor and debtor in possession ("**CCA**" or the "**Debtor**")

respectfully states as follows in support of this motion (the "**Motion**"):

---

[1]  The last four digits of CCA's federal tax identification number are 4862.  CCA's service address for the purposes of this chapter 11 case is 445 South Street, Suite 310, Morristown, NJ 07960.

## Relief Requested

1.      CCA seeks entry of an order, substantially in the form attached hereto as **Exhibit A**
(the "**Order**"), (a) approving the terms of a  settlement by and among (i) CCA; (ii) certain of its
non-debtor affiliates, CSCEC (Bahamas), Ltd. ("**CSCECB**") and CCA Bahamas, Ltd. ("**CCAB**"
and, together with CSCECB, the "**Non-Debtor Codefendants**"); (iii) CSCEC Holding Company,
Inc. ("**CSCEC Holding**"); and (iv) BML Properties, Ltd. ("**BMLP**" and, together with the Debtor,
the Non-Debtor Codefendants, and CSCEC Holding the "**Parties**") , which settlement was reached
at the mediation commencing on November 20, 2025, and will constitute as a global resolution of
all claims by and among the Parties and their affiliates, including in connection with the chapter
11 case, the Baha Mar Litigation (as defined below), and otherwise, as set forth in the Mediation
Settlement Term Sheet dated November 23, 2025, attached hereto as **Exhibit B** (the "**Term
Sheet**"), and as will be set forth in more detail in a settlement agreement to be agreed among the
parties and filed with the Court before the hearing on this Motion (the "**Settlement Agreement**,"
and the settlement reflected therein, the "**Settlement**"), and (b) granting related relief.

## Preliminary Statement

2.      With the filing of this Motion, CCA requests authority to enter into the Settlement
Agreement and implement the Settlement that resolves all claims among the Parties and their
Affiliates.  The Settlement was reached after a mediation that spanned two days including an all-
day in-person mediation on November 20, 2025 and additional good-faith negotiations over the
Term Sheet that was executed shortly after the conclusion of the mediation.  Among other things,
the Settlement reflected in the Term Sheet and the forthcoming Settlement Agreement resolves
CCA's complex disputes with BMLP, the estate's largest general unsecured creditor, a critical step
in CCA's efforts to move this chapter 11 case to conclusion.

3.      Substantially contemporaneously herewith, CCA filed a motion to seek expedited consideration of both (a) this Motion in accordance with the terms of the Term Sheet, and (b) a motion to file limited portions of the Term Sheet, the Settlement Agreement, and this Motion under seal pursuant to section 107(b) of the Bankruptcy Code.

4.      For the reasons discussed herein, the Settlement meets the standard for approval under Bankruptcy Rule 9019, and the Court should grant the Motion and authorize the Debtor to enter into the Settlement Agreement.

## Jurisdiction and Venue

5.      The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and *the Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.) (the "**Standing Order**").  CCA confirms its consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the Parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and rules 9013-1 and 9019-3 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**").

## Background[2]

8.      On December 22, 2024, CCA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  CCA continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      CCA commenced this chapter 11 case following the entry of a decision in *BML Props. Ltd. v China Construction America, Inc., et al.*, No. 657550/2017 (N.Y. Sup. Ct.), in the New York Supreme Court, Commercial Division (the "**Baha Mar Litigation**").  Specifically, CCA, along with the Non-Debtor Codefendants, was found liable to BMLP in a post-trial decision and order dated October 18, 2024 (the "**Trial Decision**"), which included a damages amount of $845 million, plus statutory interest accruing as of May 1, 2014, all of which resulted in entry of judgment in BMLP's favor in the amount of $1,642,598,493.15 (the "**Baha Mar Judgment**").

10.      At the outset of this case, CCA sought, and the Court granted, several forms of relief.  These included relief from the automatic stay to join the Non-Debtor Codefendants in appealing the Trial Decision to the New York Appellate Division, First Department, as well as interim and final approval of postpetition financing provided by CSCEC Holding.  *See* Docket Nos. 53, 27, 174.

11.      On April 8, 2025, the First Department issued a decision and order which upheld the Trial Decision (the "**First Department Decision**").  CCA subsequently sought, and the Court granted, further relief from the automatic stay to file a motion for leave to appeal the First

---

[2]    Additional information regarding CCA, the events leading up to the filing, and the facts and circumstances supporting the relief requested in this motion is set forth in the *Declaration of Yan Wei, Chairman & Chief Executive Officer of the Debtor, in Support of Chapter 11 Petition* (the "**First Day Declaration**") [Docket No. 11] which is incorporated herein by reference.

Department Decision to the New York State Court of Appeals.  Docket Nos. 266 and 293.  That motion remains pending.

12.     Concurrent with CCA's taking action to pursue its appellate rights, the Special Committee of the Board of Directors of CCA (the "**Special Committee**") undertook an investigation to identify any causes of action held by the Debtor against affiliates or insiders of CCA.  The Special Committee issued its report (the "**Special Committee Report**") on July 31, 2025.  Docket No. 502.  Following a review of the Special Committee Report and the process leading up to it, a Court-appointed Examiner, Todd Harrison, Esq., concluded that the Special Committee's conclusions "generally appear to be made in good faith and reasonable under the circumstances."  Docket No. 504, at 22.

13.     The Special Committee Report identified a "colorable" claim to potentially pierce CCA's corporate veil and impose liability on CSCEC Holding for claims against CCA.  Special Committee Report, at 71.  However, the Special Committee Report also identified several material challenges to successfully bringing this claim, including "numerous significant counterarguments and facts" weighing against the colorability of the claim, "the cost and length of time necessary to litigate such a fact-intensive claim," and "courts' reluctance to sustain veil-piercing claims." Special Committee Report, at 71.  The Special Committee Report also noted that, even if a claim were to be successful against CSCEC Holding, it is not clear that CSCEC Holding would have meaningful assets from which CCA could recover, because CSCEC Holding is a holding company whose assets consist primarily of relatively illiquid interests in various subsidiaries, including CCA.  *See* Special Committee Report, at 75.

14.     The Special Committee Report also identified colorable claims under New Jersey law against several of CCA's affiliates for breach of contract and account stated claims but

concluded that these claims were likely nonviable given the financial position of these affiliates. Special Committee Report, at 87. While the scope of the investigation included a review of potential claims against current and former directors and officers of CSCEC Ltd. under numerous legal theories, the investigation did not uncover any evidence or other misconduct to support claims against the directors and officers of CSCEC Ltd. Special Committee Report, at 14–15, 82.

15.     Subsequent to the issuance of the Special Committee Report, BMLP moved for confirmation that it held direct claims against CSCEC Holding, relief from the automatic stay to pursue post-judgment relief in New York state court, and derivative standing to pursue estate alter ego claims against CSCEC Holding (the "**Standing Motion**") [Docket No. 442]. The Debtor and CSCEC Holding both objected to the Standing Motion. [Docket Nos. 475, 473]. A hearing on the Standing Motion was held on October 9, 2025, following which the Court ordered mediation and adjourned further consideration of the Standing Motion until the December 2, 2025, omnibus hearing. October 9, 2025 Hr'g Tr. at 34:13-14.

## Mediation and the Settlement

16.     At the October 9, 2025 hearing on the Standing Motion, the Court recommended mediation among CCA, CSCEC Holding, and BMLP, to which all parties agreed. The Court subsequently entered an order ordering CCA, CSCEC Holding, and BMLP to mediate their disputes and appointing the Honorable Vincent F. Papalia and Evan R. Chesler as co-mediators (collectively, the "**Mediators**"). Docket No. 552. The Parties convened to mediate their disputes on November 20, 2025 at the offices of Debevoise & Plimpton LLP (the "**Mediation**"). Following the Mediation, on November 21, 2025, all Parties agreed to the principal terms and conditions of the Settlement and negotiated and executed the Term Sheet on November 23, 2025.

17. The Settlement is truly global. Not only does it resolves any and all claims between CCA, the Non-Debtor Codefendants, and all of their affiliates, on the one hand, and BMLP, its equityholders, and all of its affiliates, on the other hand, including but not limited to claims asserted in the Baha Mar Litigation, but the Settlement also resolves claims between and among CCA and its affiliates, including those identified in the Special Committee Report. Most significantly, all as more fully delineated in the Term Sheet and as will be set forth in the Settlement Agreement, the Parties have agreed to the following[3]:

a. A cash payment of ▉▉▉▉▉ to be made to BMLP by CCA or one or more non-debtor entities within 30 days after approval of the Settlement Agreement by a Final Order of the Court (the date of payment being the "**Settlement Effective Date**").

b. The full and final resolution, compromise, extinguishment and end of all litigation related to or arising from the Baha Mar Litigation, the subject matter thereof, the Baha Mar Judgment, including any appeals arising therefrom, and any and all other claims between (i) BMLP, all of its Related Parties and equityholders, on the one hand (the "**BMLP Releasing Parties**"), and (ii) CCA, CSCEC Holding, CSCEC Ltd., CCAB, and CSCECB and all of their respective Related Parties, on the other hand (the "**CCA Releasing Parties**").

c. Releases, in the broadest possible terms, of any and all claims between the BMLP Releasing Parties, on the one hand, and the CCA Releasing Parties, on the other hand.

d. Agreement that BMLP will cease and desist from all efforts to collect on account of the Baha Mar Judgment pending the decision of the Bankruptcy Court with respect to approval of the Settlement Agreement by Final Order of the Bankruptcy Court and, if the Settlement Agreement is so approved, pending payment of the Settlement Amount.

e. Agreement that upon the occurrence of the Settlement Effective Date, the Parties will work together using commercially reasonable efforts to formally dismiss all pending legal proceedings between them.[4]

---

[3] This summary is provided for ease of reference. In the event of any inconsistency between the main body of this Motion and the Settlement Agreement, the Settlement Agreement shall govern and control. Terms used but not defined in this summary shall have the meaning ascribed to such term in the Term Sheet.

[4] The Parties have already contacted the New York Court of Appeals and the relevant tribunal in the Bahamas to request a stay in pending legal proceedings while the Court considers this Settlement Motion, and have further agreed that if the Settlement Motion is granted, they will request that all pending legal proceedings related to the

f.  Agreement that, (a) upon entry of a Final Order of the Bankruptcy Court approving the Settlement Agreement, all motions concerning the Disputes pending in the Bankruptcy Court will be deemed withdrawn without prejudice without any further action of any party and (b) upon payment of the Settlement Amount, (i) all motions concerning the Disputes pending in the Bankruptcy Court will be deemed withdrawn with prejudice without any further action of any party; and (ii) BMLP's proof of claim (the "**BMLP Proof of Claim**") will be deemed withdrawn with prejudice.

g.  Agreement that, if the Settlement Agreement is not approved by the Court or if the Settlement Amount is not timely paid, the Term Sheet and Settlement Agreement will be null and void and the Parties will revert to their respective positions as of immediately prior to execution of the Term Sheet.

18.  The Settlement Agreement will also provide for releases of claims relating to any causes of action identified between and among CCA and its affiliates, including CSCEC Holding, identified in the Special Committee Report.

19.  Pursuant to the Settlement and Term Sheet, CCA hereby submits this Motion seeking the Court's approval of the Settlement as set forth in the Settlement Agreement.

## Basis for Relief

20.  Bankruptcy Rule 9019(a) provides, in part:

On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a). In addition, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

---

Disputes, other than this Motion, be paused or continued, and no further action be taken in them, pending payment of the Settlement Amount.  If, notwithstanding the foregoing, any action occurs in any pending legal proceedings among the Parties (other than the Bankruptcy Court's approval of the Settlement Agreement), such action will have no impact on the Settlement or the Parties' obligations under the Term Sheet to document and implement the Settlement.

21.    Settlements and compromises are "a normal part of the process of reorganization," *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), and are generally favored in bankruptcy "as they minimize litigation and expedite the administration of the bankruptcy estate." *In re Petersburg Regency LLC*, 540 B.R. 508, 535 (Bankr. D.N.J. 2015) (quoting *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)).

22.    The decision to approve a settlement is committed to the sound discretion of the Bankruptcy Court. *In re Martin*, 91 F.3d at 393; *In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 381 (Bankr. D.N.J. 2020); *In re Petersburg Regency LLC*, 540 B.R. at 535. In evaluating whether to approve a settlement, the Bankruptcy Court must determine whether it is "fair, reasonable, and in the best interests of the estate." *In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. at 381 (quoting *Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005)).

23.    The Third Circuit has prescribed a four-factor balancing test for bankruptcy courts to consider when determining whether to approve a settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *Mangano v. Warriner (In re ID Liquidation One, LLC)*, 555 F. App'x 202, 205 (3d Cir. 2014). These factors apply to the review of settlements of claims both held by and—most relevant here—asserted against a debtor. *In re Nutraquest*, 434 F.3d at 644.

24.    In applying these factors, the Bankruptcy Court "need not probe the merits of all claims or conduct a 'mini-trial' before approving the settlement; rather, avoiding litigating the issues is one of the main advantages of settlement." *In re Immune Pharm. Inc.*, 635 B.R. 118, 122

(Bankr. D.N.J. 2021) (quoting *Stanziale v. U.S. Risk Ins. Grp., Inc. (In re NovaPro Holdings, LLC)*,
815 F. App'x 655, 658 (3d Cir. 2020) (collecting cases)).  Rather, courts need only "canvass the
issues to see whether the settlement falls below the lowest point in the range of reasonableness."
*In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 1999) (citation omitted); *see In re G-1 Holdings
Inc.*, 420 B.R. 216, 256 (Bankr. D.N.J. 2009).  Moreover, the Bankruptcy Court should not
substitute its judgment for that of the debtor in possession.  *See, e.g.*, *In re Roper & Twardowsky,
LLC*, 559 B.R. 375, 394 (Bankr. D.N.J. 2016); *In re Immune Pharm. Inc.*, 635 B.R. at 122
("[U]nder normal circumstances, the court should defer to the trustee's judgment so long as there
is a legitimate business justification." (citing *In re ID Liquidation One, LLC*, 555 F. App'x 202,
207 (3d Cir. 2014))).  Ultimately, "the court need only conclude that the settlement falls within the
reasonable range of litigation possibilities somewhere above the lowest point in the range of
reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008)
(citation omitted); accord *In re Roper & Twardowsky, LLC*, 559 B.R. at 394; *In re G-1 Holdings
Inc.*, 420 B.R. at 256–57.

25.     Here, the terms of the Settlement plainly exceed the "fair, reasonable and in the
best interests of the estate" touchstone requirement for approval under Bankruptcy Rule 9019 and
are squarely within the reasonable range of litigation possibilities.

26.     First, CCA conducted a reasonable and informed process to reach the Settlement.
The settlement terms were reached as a result of a Court-ordered Mediation presided over by two
experienced professionals, including a highly-respected bankruptcy judge from this District.  At
all times, the Debtor was represented by sophisticated co-counsel familiar with the Debtor's estate,
assets, and liabilities and the strength of the Debtor's probability of success in the Baha Mar
Litigation and efforts to appeal the Baha Mar Judgment and First Department Decision.  The

Debtor was also guided by its independent Special Committee and the Special Committee's counsel, which participated in all aspects of the Mediation, the settlement discussions, and the negotiation of the Term Sheet.

27.    Second, the monetary settlement between the CCA Releasing Parties and BMLP, one of the main features of the Settlement, is reasonable under the circumstances.  The Settlement Amount represents a reduction of over ████████ in liabilities for the Debtor or approximately ████ of the value of the BMLP Proof of Claim.[5]  ████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████

28.    Third, the Settlement is also in the best interests of the Debtor's estate.  The Settlement will allow CCA to finally conclude the Baha Mar Litigation and remove an overhang that has constrained the business operations of CCA and its operating subsidiaries for years.  The Baha Mar Litigation and related adverse judgment is the principal reason that this chapter 11 case was filed and impacted CCA's efforts to implement a restructuring.  It also constrained the CCA Group's ability to obtain surety bonds which in turn, limited its ability to secure new construction contracts.

29.    The Settlement is also fair, reasonable, and in the best interest of the estate with respect to the claims identified in the Special Committee Report that CCA might assert against certain affiliates.  Such claims will be released as part of the Settlement.  As noted above, the Special Committee Report identified colorable claims held by CCA against CSCEC Holding and

---

[5]    In fact, the percentage reduction is even greater because the Baha Mar Judgment continues to accrue interest at nine percent (9%).

certain other affiliates, but noted that these claims would be difficult to collect upon due to legal and practical difficulties, including CSCEC Holding's status as a holding company with limited liquid assets with which to pay a judgment.[6]  Special Committee Report at 75.  The significant value that will be provided to CCA in the form of payment of the settlement amount by, or using funds from, CSCEC Holding and other affiliates including the Non-Debtor Codefendants, is a reasonable and fair exchange for releasing these difficult-to-collect intercompany claims.  Put differently, obtaining access to sufficient value to fully resolve the Baha Mar Litigation that has cast a shadow over CCA's business is plainly in the best interests of the estate given the limited practical value of CCA's claims against CSCEC Holding and other affiliates identified in the Special Committee Report.

30.     The Settlement also exceeds the requirements of the Third Circuit's four-part balancing test.  Although CCA maintains that the Trial Decision and First Department Decision were both incorrect as a matter of law and feels confident it would have a strong case before the New York State Court of Appeals, CCA nonetheless recognizes certain risks involved in continued litigation with BMLP.  First, CCA and the Nondebtor Codefendants did not have an appeal as of right and had to petition the New York Court of Appeals for leave to appeal.  The petition to the New York Court of Appeals has not yet been granted and might never be granted.  Second, if the New York Court of Appeals accepted CCA's appeal, or even if CCA ultimately prevailed, there would be no guarantee of a complete or even partial reversal of the Trial Decision or First Department Decision; rather, the New York Court of Appeals could find in CCA's favor on

---

[6]     *See also Debtor's Objection to Motion of BML Properties, Ltd. for Entry of an Order (A) Confirming Direct Claims Against CSCEC Holding Company, Inc., (B) Granting Limited Relief from the Automatic Stay to Pursue Post-Judgment Relief in New York State Court or Other Appropriate Forum, (C) Granting Derivative Standing to Pursue Estate Alter Ego Claims Against CSCEC Holding Company, Inc., and (D) Granting Related Relief*, at ¶ 29 [Docket No. 475]

ultimately non-dispositive issues.  The Settlement Amount reflects the considered, informed business judgment of CCA and the Special Committee with respect to these probabilities of success.

31.     The Settlement also avoids future highly complex litigation, both with BMLP and others.  For example, CCA and its Non-Debtor Codefendants could potentially face remand to the New York Supreme Court to relitigate complex legal and factual issues including choice of law, the appropriate calculation of damages, and potential veil piercing claims.  The Settlement avoids these, and other, complex issues.  In addition, were CCA's motion for leave to appeal denied by the New York Court of Appeals and the Baha Mar Judgment rendered effectively final and non-appealable, BMLP has already indicated that it would seek to pursue payment from CCA's affiliates, including CSCEC Holding, through veil-piercing and direct claims in connection with the Baha Mar litigation.  *See generally* Standing Motion at 9, 10.  If pursued, this litigation, even if it would not directly impact CCA's estate, would maintain the cloud over CCA's business, distract its management, and ultimately undermine its business.  The Settlement also avoids this costly and complex litigation for CCA.

32.     Finally, the Settlement is in the paramount interest of all of CCA's creditors.  Most directly, the Settlement reflects an agreement with BMLP, CCA's largest single creditor. Additionally, the Settlement is in the best interests of CCA's other creditors because it will enable CCA to move quickly to resolve the chapter 11 case and continue its ongoing business operations. Absent the Settlement, it is unclear when CCA would be able to move the chapter 11 case to conclusion and when or if CCA would be able to pay its other creditors.

### Reservation of Rights

33.      Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) a waiver or limitation of the Debtor's, or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law.   For the avoidance of doubt, as set forth in the Term Sheet, if the Settlement fails, all Parties will be restored to their positions existing immediately prior to execution of the Term Sheet.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

34.      To successfully implement the foregoing, CCA requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that CCA has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### No Prior Request

35.      No prior request for the relief sought in this Motion has been made to this or any other Court.

### Notice

36.      CCA will provide notice of this motion to:  (a) the U.S. Trustee; (b) the entities listed on the *List of Creditors Holding the 20 Largest Unsecured Claims*; (c) Gibbons P.C. and Quinn Emanuel Urquhart & Sullivan, LLP as counsel to BMLP; (d) Lowenstein Sandler LLP, as

counsel to CSCEC Holding; (e) the Internal Revenue Service; (f) the Office of the United States Attorney for the District of New Jersey; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, CCA respectfully submits that no further notice is necessary.

For the reasons set forth herein, CCA submits that the Settlement as set forth in the Term Sheet and the forthcoming Settlement Agreement is fair, reasonable, and in the best interests of the estate and in the paramount interest of CCA's creditors.  CCA respectfully requests that the Court grant the Motion and enter the Order.

Dated:    November 26, 2025

/s/ Michael D. Sirota
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Ryan T. Jareck
Felice R. Yudkin
Court Plaza North, 25 Main Street
Hackensack, NJ 07601
Telephone:  (201) 489-3000
Facsimile:   (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

-and-

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Erica S. Weisgerber (admitted *pro hac vice*)
Elie J. Worenklein
66 Hudson Boulevard
New York, NY 10001
Telephone:  (212) 909-6000
Facsimile:   (212) 909-6836
nlabovitz@debevoise.com
eweisgerber@debevoise.com
eworenklein@debevoise.com

*Co-Counsel to the Debtor and Debtor in Possession*

## Exhibit A

**Proposed Order**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**DEBEVOISE & PLIMPTON LLP**<br>M. Natasha Labovitz (admitted *pro hac vice*)<br>Erica S. Weisgerber (admitted *pro hac vice*)<br>Elie J. Worenklein<br>66 Hudson Boulevard<br>New York, NY 10001<br>Telephone: (212) 909-6000<br>Facsimile: (212) 909-6836<br>nlabovitz@debevoise.com<br>eweisgerber@debevoise.com<br>eworenklein@debevoise.com<br><br>**COLE SCHOTZ P.C.**<br>Michael D. Sirota<br>Warren A. Usatine<br>Felice R. Yudkin<br>Ryan T. Jareck<br>Court Plaza North, 25 Main Street<br>Hackensack, NJ 07601<br>Telephone: (201) 489-3000<br>Facsimile: (201) 489-1536<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com<br>rjareck@coleschotz.com<br><br>*Co-Counsel to the Debtor and Debtor in Possession* | |
| In re:<br><br>CCA Construction, Inc.,[1]<br><br>      Debtor. | Case No. 24-22548 (CMG)<br><br>Chapter 11<br><br>Judge: Christine M. Gravelle |

---

[1]  The last four digits of CCA's federal tax identification number are 4862.  CCA's service address for the purposes of this chapter 11 case is 445 South Street, Suite 310, Morristown, NJ 07960.

| (Page \| 2) | |
| --- | --- |
| Debtor: | CCA Construction, Inc. |
| Case No.: | 24-22548 (CMG) |
| Caption of Order: | Order (A) Approving a Settlement Among CCA Construction, Inc., CSCEC Holding Company, Inc., BML Properties, Ltd., and Certain Related Parties and (B) Granting Related Relief |

**ORDER (A) APPROVING A SETTLEMENT
AMONG CCA CONSTRUCTION, INC., CSCEC HOLDING
COMPANY, INC., BML PROPERTIES, LTD., AND CERTAIN
RELATED PARTIES AND (B) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through six (6), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtor: | CCA Construction, Inc. |
| Case No.: | 24-22548 (CMG) |
| Caption of Order: | Order (A) Approving a Settlement Among CCA Construction, Inc., CSCEC Holding Company, Inc., BML Properties, Ltd., and Certain Related Parties and (B) Granting Related Relief |

Upon the *Motion for Entry of an Order (A) Approving a Settlement Among CCA Construction, Inc., CSCEC Holding Company, Inc., BML Properties, Ltd., and Certain Related Parties and (B) Granting Related Relief* (the "**Motion**")[2] of the above-captioned debtor and debtor in possession (the "**Debtor**"), for entry of an order (this "**Order**") (a) approving the Settlement Agreement by and between Debtor CCA Construction, Inc, CSCEC Holding, CSCECB, CCAB and BMLP, filed at Docket No. [•] and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate; and this Court having found that the Debtor's notice of the Motion was sufficient and otherwise appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court, if any; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED THAT:

1.      The Motion is **GRANTED** as set forth herein.

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion

(Page | 4)

| | |
|---|---|
| Debtor: | CCA Construction, Inc. |
| Case No.: | 24-22548 (CMG) |
| Caption of Order: | Order (A) Approving a Settlement Among CCA Construction, Inc., CSCEC Holding Company, Inc., BML Properties, Ltd., and Certain Related Parties and (B) Granting Related Relief |

2.      The Settlement Agreement is hereby approved pursuant to Bankruptcy Rule 9019(a) and sections 105, 363, and 364 of the Bankruptcy Code. The Debtor is authorized and directed to take all actions necessary to immediately continue and fully implement the terms of the Settlement Agreement, including remittance of the Settlement Amount (as defined in the Settlement Agreement).

3.      Upon payment of the Settlement Amount to BMLP, the BMLP Proof of Claim shall be deemed resolved and withdrawn with prejudice, with no payments owing by the Debtor with respect to such claim.

4.      Upon payment of the Settlement Amount to BMLP, all motions, objections, replies, and sur-replies concerning the Disputes filed in the above-captioned case shall be deemed withdrawn with prejudice, including but not limited to all pleadings filed in connection with (i) the *Motion of BML Properties, Ltd. for Entry of an Order (A) Confirming Direct Claims Against CSCEC Holding Company, Inc., (B) Granting Limited Relief from the Automatic Stay to Pursue Post-Judgment Relief in New York State Court or Other Appropriate Forum, (C) Granting Derivative Standing to Pursue Estate Alter Ego Claims Against CSCEC Holding Company, Inc., and (D) Granting Related Relief* [Docket No. 444], (ii) the *Debtor's Objection to the BMLP Standing Motion* [Docket No. 475], (iii) the *Debtor's Motion for Entry of an Order Disqualifying Quinn Emanuel Urquhart & Sullivan, LLP as Counsel for BML Properties, Ltd.* [Docket No. 563] and (iv) *BMLP Subpoenas for Rule 2004 Examinations* [Docket Nos. 100 and 111].

5.      For any portion of the Settlement Amount to be paid by the Debtor's estate, BMLP shall receive a first-priority lien on such portion of the Settlement Amount while in the possession of the Debtor, and all rights thereto.

| | |
|---|---|
| Debtor: | CCA Construction, Inc. |
| Case No.: | 24-22548 (CMG) |
| Caption of Order: | Order (A) Approving a Settlement Among CCA Construction, Inc., CSCEC Holding Company, Inc., BML Properties, Ltd., and Certain Related Parties and (B) Granting Related Relief |

6.      Upon receipt of any funds on account of the Settlement Amount, the Debtor's estate shall remit such funds to BMLP on the earlier of (i) two (2) business days after receipt thereof or (ii) thirty (30) days after entry of this Order.

7.      Upon entry of this Order, the Parties shall take all steps necessary to request that all pending legal proceedings related to the Disputes be stayed or continued, and no Party shall take any action in such proceedings pending the Settlement Effective Date except as necessary to effectuate this Order.

8.      Pending payment of the Settlement Amount, BMLP is enjoined from taking any action to collect on the Baha Mar Judgment.

9.      After the occurrence of the Settlement Effective Date, the claims agent in this chapter 11 case is authorized to amend the claims register for the chapter 11 case to comport with the entry of this Order and the terms and conditions of the Settlement Agreement.

10.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a promise or requirement to pay any particular claim; (c) an admission by the Debtor as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estates; (d) a waiver or limitation of the Debtor's, or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law, other than as provided in the Settlement Agreement; and (e) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the

| | |
|---|---|
| Debtor: | CCA Construction, Inc. |
| Case No.: | 24-22548 (CMG) |
| Caption of Order: | Order (A) Approving a Settlement Among CCA Construction, Inc., CSCEC Holding Company, Inc., BML Properties, Ltd., and Certain Related Parties and (B) Granting Related Relief |

rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Unless otherwise expressly agreed to in writing by each of the Parties in their respective sole discretion, if the Settlement Amount is not timely paid, the Term Sheet and Settlement Agreement will be null and void and the Parties will revert to their respective positions as of immediately prior to execution of the Term Sheet.

11.    Nothing in this Order shall be construed as modifying or terminating any stay applicable to any act, action, or proceeding pursuant to section 362 of the Bankruptcy Code, or any order entered by this Court pursuant to section 105 of the Bankruptcy Code, other than to the extent required to perform under the terms of the Settlement Agreement or as otherwise provided therein.

12.    This Order shall be binding on the Debtor, its estate, all creditors and parties-in-interest, and any successor in interest to the Debtor in this chapter 11 case.

13.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

15.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be immediately effective and enforceable upon entry hereof.

16.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit B

**Term Sheet**

EXECUTION VERSION

## CCA Construction, Inc.
### Mediation Settlement Term Sheet

This term sheet (the "**Term Sheet**") summarizes the principal terms and conditions of a global settlement (the "**Settlement**") reached as a result of mediation held on November 20, 2025 concerning disputes (the "**Disputes**") among CCA Construction, Inc. ("**CCA**"), CSCEC Holding Company, Inc. ("**CSCEC Holding**"), CCA Bahamas, Ltd. ("**CCAB**"), CSCEC (Bahamas) Ltd. ("**CSCECB**") and BML Properties, Ltd. ("**BMLP**," and collectively with CCA, CSCEC Holding, CCAB, and CSCECB, the "**Parties**"). Evan R. Chesler and the Honorable Vincent F. Papalia served as co-mediators.

| Defined Terms | |
|---|---|
| Bankruptcy Court | "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey or any other court having jurisdiction over CCA's chapter 11 case or any proceeding within, or appeal of an order entered in, CCA's chapter 11 case. |
| Final Order | "**Final Order**" means a court order as to which all rights of appeal, certiorari, reargument, repleading, reconsideration, and rehearing have been exhausted or waived and the time to seek any such relief has expired. |
| Related Parties | "**Related Parties**" means, with respect to an entity (as defined in section 101(15) of the Bankruptcy Code), such entity's current and former direct and indirect affiliates (as defined in section 101(2) of the Bankruptcy Code), and such entity's and its current and former affiliates' current and former directors, managers, officers, direct and beneficial equityholders (other than equityholders who otherwise would not be affiliated but for their ownership of stock through a public stock exchange), participants, successors, assigns, heirs, and subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, partners, agents, fiduciaries, trustees and other representatives, including anyone claiming by, through, or on behalf of such entity or any of the foregoing. |
| Settlement Effective Date | The date upon which the Settlement has been approved by a Final Order of the Bankruptcy Court and the Settlement Amount has been paid to BMLP is the ("**Settlement Effective Date**"). |
| Settlement Terms | |
| Settlement Structure | A cash payment of ▮▮▮▮▮▮▮▮▮▮▮▮ (the "**Settlement Amount**") will be payable to BMLP by CCA or one or more non-debtor entities within 30 days after approval |

EXECUTION VERSION

| | of the Settlement by a Final Order of the Bankruptcy Court. |
|---|---|
| Settlement Agreement | The Parties agree to work in good faith to draft a formal written settlement agreement memorializing the terms of the Term Sheet, including full release language, (the "**Settlement Agreement**") to be executed by the Parties and presented for approval by the Bankruptcy Court in accordance with the terms herein. |
| Bankruptcy Court Approval | CCA will file a motion for approval of the Settlement (the "**Settlement Motion**") with the Bankruptcy Court within five business days of the date of the Term Sheet seeking entry of an order approving the Settlement and, to the extent any portion of the Settlement Amount will be paid by CCA, authorizing such payment (the "**Settlement Order**"). The Settlement Motion will (i) attach this agreed-upon Term Sheet (or the Settlement Agreement, if completed prior to filing the Settlement Motion), (ii) if applicable, indicate that the Settlement Agreement will be presented prior to the hearing on the Settlement Motion, and (iii) be accompanied by an application seeking to have the Settlement Motion heard on the shortest notice the Bankruptcy Court will permit. Each of the Parties consents to such shortened notice, and consents to having the Settlement Motion heard via telephone or Zoom if so directed by the Bankruptcy Court. The Bankruptcy Court order will enjoin the Parties from taking any action on or after the Settlement Effective Date (i) to pursue any of the released claims or, except as set forth in the section below entitled "Pending Legal Proceedings," (ii) otherwise concerning the Disputes (other than to enforce the terms of the Settlement). <br><br> The form of Settlement Order shall include the following provisions: <br><br> • For any portion of the Settlement Amount to be paid by CCA's estate, BMLP shall receive a first priority lien on such portion of the Settlement Amount while in the possession of CCA, and all rights thereto; and <br><br> • Upon receipt of any funds on account of the Settlement Amount, CCA's estate will pay such funds over to BMLP on the earlier of two business days after receipt or 30 days after entry of the Settlement Order. <br><br> Unless otherwise agreed in writing by the Parties in their respective sole discretion, if (a) the Bankruptcy Court enters a |

EXECUTION VERSION

| | |
|---|---|
| | Final Order declining to approve the Settlement or (b) the Settlement Amount is not paid in accordance with the Settlement Structure as set forth in this Term Sheet, the Settlement will be void, the Parties will be restored to their respective litigation positions existing immediately prior to execution of this Term Sheet,. CCA will not have any claim or other recourse against any of its affiliates related to the Settlement or this Term Sheet and shall not argue that pursuit by BMLP of non-debtor affiliates on account of any claim arising from the failure to make the Settlement Payment is barred by 11 U.S.C. §§ 362(a) or 541(a) or any other provision of the Bankruptcy Code. The Term Sheet shall not be admissible as evidence in any proceeding whatsoever, other than a proceeding to enforce the Term Sheet. |
| <u>Pending Legal Proceedings</u> | Upon the occurrence of the Settlement Effective Date, the Parties will work together using commercially reasonable efforts to formally dismiss all pending legal proceedings between them.<br><br>Upon the filing of the Settlement Motion to occur no later than November 26, 2025, the Parties will work together expeditiously to request of the relevant tribunals that all pending legal proceedings related to the Disputes, other than the Settlement Motion, be paused or continued, and that no further action be taken in them pending the decision of the Bankruptcy Court with respect to approval of the Settlement by Final Order of the Bankruptcy Court and, if the Settlement is so approved, pending payment of the Settlement Amount; *provided, however*, that BMLP, CCA, CCAB, and CSCECB shall use best efforts to jointly communicate on November 24, 2025 to the New York State Court of Appeals a request to stay any decision concerning that certain pending petition to authorize an appeal in connection with the case styled as *BML Properties Ltd. v. China Construction America, Inc., et al.*, Index No. 657550/2017 (the "**New York Action**"); *further, provided, that* BMLP, CCAB, and CSCECB agree to defer to November 27, 2025, submission of any evidence in that certain Winding Up proceeding pending in the Bahamas in order to allow for the filing of the Settlement Motion.<br><br>As set forth herein, BMLP will cease and desist from all efforts to collect on account of the judgment (the "**Judgment**") entered by the Supreme Court of the State of New York  in favor of BMLP and against CCA, CCAB, and CSCECB in the New York Action pending the decision of the Bankruptcy Court with respect to approval of the Settlement |

EXECUTION VERSION

| | |
|---|---|
| | by Final Order of the Bankruptcy Court and, if the Settlement is so approved, pending payment of the Settlement Amount.<br><br>If, notwithstanding the foregoing, any action occurs in any pending legal proceedings among the Parties (other than the Bankruptcy Court's approval of the Settlement), such action will have no impact on the Settlement or the Parties' obligations under the Term Sheet to document and implement the Settlement. |
| <u>Releases</u> | For the avoidance of doubt, the Settlement is intended to fully and finally resolve, compromise, extinguish and end all litigation related to or arising from the New York Action, the subject matter thereof, the Judgment, including any appeals arising therefrom, and any and all other claims between (i) BMLP, all of its Related Parties (as defined in the Bankruptcy Code) and equity-holders, on the one hand, (the "**BMLP Releasing Parties**") and (ii) CCA, CSCEC Holding, CSCEC Ltd., CCAB, and CSCECB and all of their respective Related Parties on the other hand (the **CCA Releasing Parties**"). The Settlement Agreement will include releases, in the broadest possible terms, of any and all claims between the BMLP Releasing Parties, on the one hand, and the CCA Releasing Parties, on the other hand.<br><br>Upon entry of a Final Order of the Bankruptcy Court approving the Settlement, all motions concerning the Disputes pending in the Bankruptcy Court shall be deemed withdrawn without prejudice without any further action of any party.<br><br>Upon payment of the Settlement Amount, (i) all motions concerning the Disputes pending in the Bankruptcy Court shall be deemed withdrawn with prejudice without any further action of any party; and (ii) BMLP's proof of claim shall be deemed withdrawn with prejudice. |

**IN WITNESS WHEREOF**, CCA, CSCEC Holding, CSCECB, CCAB, and BMLP have executed this Term Sheet as of November 23, 2025.

**CCA Construction, Inc., Debtor and Debtor in Possession**

By: ____ ███████████ _____

Name:    Yan Wei

Title:    Chairman and CEO

**CSCEC Holding Company, Inc.**

By: ____ ███████████ _____

Name:    Yan Wei

Title:    CEO and President

**CSCEC Bahamas, Ltd.**

By: _____

Name:

Title:

**CCA Bahamas, Ltd.**

By: _____

Name:

Title:

**BML Properties, Ltd.**

By: _____

Name:

Title:

*[Signature Page to Term Sheet]*

**IN WITNESS WHEREOF**, CCA, CSCEC Holding, CSCECB, CCAB, and BMLP have executed this Term Sheet as of November 23, 2025.

**CCA Construction, Inc., Debtor and Debtor in Possession**

By: _____

Name:

Title:


**CSCEC Holding Company, Inc.**

By: _____

Name:

Title:


**CSCEC Bahamas, Ltd.**

By: _____

Name: FU XIN

Title:   President


**CCA Bahamas, Ltd.**

By: _____

Name:

Title:


**BML Properties, Ltd.**

By: _____

Name:

Title:


*[Signature Page to Term Sheet]*

**IN WITNESS WHEREOF**, CCA, CSCEC Holding, CSCECB, CCAB, and BMLP have executed this Term Sheet as of November 23, 2025.

**CCA Construction, Inc., Debtor and Debtor in Possession**

By: _____

Name:

Title:

**CSCEC Holding Company, Inc.**

By: _____

Name:

Title:

**CSCEC Bahamas, Ltd.**

By: _____

Name:

Title:

**CCA Bahamas, Ltd.**

By: ___ ██████████████ _____

Name:   Genguo Ju

Title:    Executive Vice President and Secretary

**BML Properties, Ltd.**

By: _____

Name:

Title:

*[Signature Page to Term Sheet]*

**IN WITNESS WHEREOF**, CCA, CSCEC Holding, CSCECB, CCAB, and BMLP have executed this Term Sheet as of November 23, 2025.

**CCA Construction, Inc., Debtor and Debtor in Possession**

By: _____

Name:

Title:

**CSCEC Holding Company, Inc.**

By: _____

Name:

Title:

**CSCEC Bahamas, Ltd.**

By: _____

Name:

Title:

**CCA Bahamas, Ltd.**

By: _____

Name:

Title:

**BML Properties, Ltd.**

By: ████████████████_____

Name:   Whitney Thier

Title:    Executive Vice President & General Counsel

*[Signature Page to Term Sheet]*